**Affirmed and Opinion filed April 29, 2014.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00394-CR

## BRANDON LYNN DARKINS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 263rd District Court
Harris County, Texas
Trial Court Cause No. 1331514**

## O P I N I O N

Appellant Brandon Lynn Darkins appeals his conviction for aggravated assault with a deadly weapon. In five issues he argues (1) the evidence is insufficient to support his conviction; (2) the trial court erred in failing to give a lesser-included offense instruction in the jury charge; and (3) he received ineffective assistance of counsel. We affirm the judgment of the trial court.

BACKGROUND

Appellant and Lisa Miller walked into the Shakespeare Pub about thirty minutes to an hour before closing. The Shakespeare Pub is located in a shopping center next door to a florist. The bartender, Courtney Sherrouse, sold appellant and Miller one drink each because it was near closing time. Appellant and Miller began to play pool at a table near other patrons of the bar. The bartender noted that the bar was not very full that night and there were available pool tables with no other patrons around them. However, appellant and Miller chose the pool table next to the only other patrons in the bar. As they were using the cue sticks, appellant and Miller almost struck a few of the people closest to the table with the pool cues. Those patrons asked appellant and Miller to be more careful or move to another pool table. The manager asked appellant and Miller to leave because the patrons that were sitting at the table still had open tabs, whereas appellant and Miller had already paid for the one drink they had bought.

Each of the witnesses described this confrontation somewhat differently. A bar patron, Christopher Monteverde, testified that the manager placed his hand on appellant's back and "nudged" him toward the door. The bartender testified that Miller became angry when the manager asked them to leave. She testified that the manager placed his hand on Miller's shoulder, and said, "[M]a'am, I don't care. You need to leave." The bartender testified that appellant reacted aggressively to the manager's suggestion that they leave, and hit the manager in the face. According to the bartender, appellant hit the manager repeatedly.

After a few minutes, the manager and appellant continued their altercation outside the bar. As the altercation escalated, the bartender retrieved her personal taser in an attempt to stop appellant. The bartender testified that she used the taser at least six times, but it had no effect on appellant. Once outside the bar, Miller

2

attempted to intervene, but the bartender grabbed her to keep her from attacking the manager while he lay on the ground with appellant repeatedly punching him. Miller told appellant they should leave, threw appellant her car keys, and got into the passenger seat of her sport utility vehicle. Appellant got into the driver's seat.

At the time appellant and Miller got into the vehicle only three individuals were outside a gated area of the bar: the manager, Monteverde, and the complainant Joseph Aponte. The complainant was outside helping band members load their van. The complainant walked toward the altercation when he saw the bartender using her taser on appellant. The complainant was standing next to the manager attempting to help the manager get the license plate number of the vehicle.

Appellant, still angry, shouted out the window, apparently at the manager. Appellant started the car, backed up, and revved the engine. Monteverde and the bartender both saw appellant back up, and saw what they each described as "malicious intent" on appellant's face as he drove toward them. The bartender was the only individual with any type of weapon. No one was approaching the car or threatening Miller. Both the bartender and Monteverde saw that appellant was driving toward the manager; Monteverde quickly pushed the manager out of the path of the vehicle. The complainant saw appellant back up twice, but was unable to get out of the way. Appellant drove the vehicle into the complainant, and kept driving until the vehicle ran into an adjacent florist shop, and stopped.

Appellant backed the vehicle out of the florist, and drove away. According to Miller, appellant drove to an apartment complex, got out of the vehicle and ran away. Miller was driven home by two strangers. Claiming she did not think any individuals were injured, Miller contacted her civil attorney about the damage to the florist, and had her windshield repaired.

Appellant testified, but told a different version of events. Appellant claimed that he and Miller went to a different bar before going to the Shakespeare Pub, contradicting Miller's testimony that they had not gone anywhere else before going to the Shakespeare Pub. When they arrived at Shakespeare, Miller paid for their drinks, but left her credit card at the bar. They played pool, but Miller quickly won. Appellant claimed that Miller wanted to leave because she claimed she was getting negative attention including stares, looks, and whispers. Appellant did not see any other black patrons in the pub.

Appellant testified that as Miller left to get her credit card from the bar, he walked outside, and someone—the manager or the bartender—pushed him from behind. Appellant testified that the man said, "[G]et the hell out, I wasn't to come back there, boy." Appellant thought the man was joking until he pushed appellant again. Appellant turned, grabbed the man's arm, and told him that, "he didn't know who he was messing with." Appellant pushed the man away and walked outside to Miller's vehicle, but could not get in because Miller still had the keys. Appellant testified he was outside alone when the bartender[1] came outside after him. Appellant turned around so fast that his left contact lens flew out of his eye. The man grabbed him and wrestled him to the ground. Appellant recognized the man as the same one who had pushed him while he was inside.

Appellant testified, "[W]e grappled for a while he tried to slam me by reverse and he end[ed] up falling on his back[.]" At that moment, Miller came out of the pub with four or five people trying to push past her to get to him. Appellant heard those people using racial slurs, but stayed to get his shoe, which had come off during his struggle with the man. Appellant testified that as the crowd chanted

---

[1] Appellant testified this individual was the bartender, but used a male pronoun. The bartender was female, but the manager was male. From appellant's testimony, it appears this altercation involved a male.

4

racial slurs in unison, Miller handed him the keys, saying they would hurt him if he did not leave.

Appellant intended to leave, but felt like people were surrounding the vehicle. He put the vehicle in reverse, and started to back up, but the transmission suddenly slipped into neutral. Because he could not see well without his left contact lens, appellant leaned down to shift the vehicle back into reverse. As he looked back up, appellant saw several people coming toward him. Appellant explained that he drove toward the people to prevent them from harming him or Miller. He explained that he did not intend to hit anyone with the vehicle, but drove toward them to prevent them from getting to the vehicle. Appellant testified that, "The vehicle went over the curb, I gassed it too much and it went into the building." Appellant realized he had hit an individual when he saw the individual go through the glass window.

Appellant backed the vehicle out of the florist, and drove to a nearby apartment complex to "remove some of the glass from the windshield because it was hard to see." Miller left with two individuals, and appellant called a friend to pick him up. Appellant testified he did not intend to cause serious bodily injury to anyone. Appellant admitted a prior conviction for reckless intent with a motor vehicle.

The jury convicted appellant of aggravated assault with a deadly weapon and assessed punishment at eight years in prison.

## SUFFICIENCY OF THE EVIDENCE

In his first two issues, appellant contends the evidence is legally insufficient to support the conviction, or to rebut the affirmative defense that appellant acted in self-defense.

5

In evaluating the legal sufficiency of the evidence, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). Because the factfinder views the evidence first-hand, the factfinder is in the best position to resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from the evidence. *See Jackson*, 443 U.S. at 319; *Laster*, 275 S.W.3d at 517 ("[U]nlike the factfinder—who can observe facial expressions and hear voice inflections first-hand—an appellate court is limited to the cold record."). We presume that the factfinder resolved any conflicts in favor of the verdict and must defer to that resolution, as long as it is rational. *Jackson*, 443 U.S. at 326. "After giving proper deference to the factfinder's role, we will uphold the verdict unless a rational factfinder must have had reasonable doubt as to any essential element." *Laster*, 275 S.W.3d at 517.

To obtain a conviction for aggravated assault, the State was required to prove that appellant (1) intentionally or knowingly caused bodily injury to another; and (2) used or exhibited a deadly weapon during the commission of the assault. Tex. Penal Code § 22.02. The jury was instructed on the law of self-defense that a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force. *See* Tex. Penal Code § 9.31(a).

Appellant does not challenge the findings that he used a deadly weapon and the complainant sustained "bodily injury" or "serious bodily injury." Rather, the gist of appellant's complaint is that he lacked the requisite culpable mental state and acted in self-defense. Assault by causing bodily injury is a result-oriented

6

offense. *Ford v. State*, 38 S.W.3d 836, 844 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). Therefore, the State must prove the defendant caused the result with the requisite culpable mental state. *See id*. "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." Tex. Penal Code § 6.03(a).

Appellant argues that he lacked the specific intent to cause injury to the complainant. The jury charge required the State to prove: (1) it was appellant's conscious objective or desire to cause bodily injury by striking the complainant with the car, and (2) he was aware that his conduct was reasonably likely to cause the result. *See* Tex. Penal Code § 22.01. Intent may be inferred from circumstantial evidence such as the appellant's acts, words, and conduct. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); *Medina v. State*, 411 S.W.3d 15, 21 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Intent may also be inferred from the use of a deadly weapon, unless it would not be reasonable to infer that death or serious bodily injury could result from use of the weapon. *Arnold v. State*, 234 S.W.3d 664, 672 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

Appellant admitted that he drove toward the people in the parking lot. Each of the witnesses described appellant's actions as intentional. The witnesses described appellant backing out of the parking space, driving forward a few feet, then reversing again. They also described that he "revved" the engine, and could have easily left the parking lot without driving toward the people or the florist. The record reflects sufficient evidence that appellant acted with the requisite culpable mental state.

Appellant further argues that the evidence was legally insufficient to support the jury's implicit rejection of his claim of self-defense. Appellant argues he had

7

reason to defend himself because he was (1) "shoved out of the bar by the manager for being black with a white woman," (2) assaulted by the bartender and the manager, (3) heard numerous racial slurs, and (4) saw a number of people approaching him that he believed intended to harm him.

In resolving the sufficiency of the evidence issue, we look not to whether the State presented evidence that refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of aggravated assault beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt. *See Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991); *Hernandez v. State*, 309 S.W.3d 661, 665 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

Appellant admitted he drove the vehicle toward the people outside the bar. Appellant argues it was unreasonable for the jury to reject his claim that he acted in self-defense. Appellant points out the discrepancies between other witnesses and himself with regard to whether the manager or appellant was the initial aggressor in the fight inside the bar. Appellant argues he did not provoke the attack, and he acted appropriately in defense of himself and Miller.

Any alleged inconsistencies in the witnesses' testimony concern the credibility and weight to be given their testimony. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). To the extent the testimony is inconsistent, the jury as the trier of fact had the ultimate authority to determine the credibility of witnesses and the weight to be given to their testimony. *See* Tex. Code Crim. Proc. art. 38.04; *Garcia v. State*, 919 S.W.2d 370, 382 n. 6 (Tex. Crim. App. 1996). Any inconsistencies in the testimony should be resolved in favor of the jury's verdict in a legal-sufficiency review. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App.

1988); *Draper v. State*, 335 S.W.3d 412, 415 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

The evidence supporting appellant's claim of self-defense consisted of his self-serving testimony that the manager was the aggressor in the fight, and he was the victim of racial slurs. Each of the other witnesses testified that they either did not know who started the fight, or that appellant was the aggressor. No other witness testified that they heard racial slurs, or that people were approaching the vehicle in an aggressive manner.

Considering all of the evidence in the light most favorable to the verdict, a rational jury could have determined beyond a reasonable doubt that appellant had the specific intent to cause bodily injury. Moreover, there is sufficient evidence to support the jury's implicit rejection of self-defense. We overrule appellant's first two issues.

## LESSER-INCLUDED OFFENSE

In his third issue appellant argues the trial court erred in failing to give the jury an instruction on the lesser-included offense of deadly conduct where the record reflects more than a scintilla of evidence that appellant would be entitled to the lesser charge.

We review the trial court's decision on the submission of a lesser-included offense for an abuse of discretion. *See Jackson v. State*, 160 S.W.3d 568, 575 (Tex. Crim. App. 2005); *Penaloza v. State*, 349 S.W.3d 709, 711 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). We apply a two-prong test when determining whether a defendant is entitled to an instruction on a lesser-included offense. *See Wortham v. State*, 412 S.W.3d 552, 554 (Tex. Crim. App. 2013); *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993); *Royster v. State*, 622 S.W.2d

442, 444 (Tex. Crim. App. 1981). First, we consider whether the lesser-included offense is included within the proof necessary to establish the charged offense. *See* Tex. Code Crim. Proc. art. 37.09; *Flores v. State*, 245 S.W.3d 432, 439 (Tex. Crim. App. 2008). If it is, we then examine whether there is evidence in the record that would permit a jury to rationally find that if the defendant is guilty, he is guilty of only the lesser-included offense. *See Aguilar v. State*, 682 S.W.2d 556, 558 (Tex. Crim. App. 1985).

Appellant was charged with "intentional and knowing" aggravated assault. Specifically, the State alleged that appellant "unlawfully intentionally and knowingly cause[d] bodily injury to . . . the complainant, by striking the complainant with a motor vehicle, and the defendant used and exhibited a deadly weapon, namely a motor vehicle." *See* Tex. Penal Code § 22.02(a)(2). A person commits the offense of assault if he "intentionally, knowingly, or recklessly causes bodily injury to another." Tex. Penal Code § 22.01(a)(1). A person commits the offense of misdemeanor deadly conduct if he "recklessly engages in conduct that places another in imminent danger of serious bodily injury." Tex. Penal Code § 22.04(a).

At trial, appellant requested that the trial court include an instruction on deadly conduct in the jury charge. Appellant argues that because there is more than a scintilla of evidence that he acted recklessly, he is entitled to an instruction on deadly conduct. There is no dispute that deadly conduct is a lesser-included offense of aggravated assault. *See Ford v. State*, 38 S.W.3d at 845 (one who causes bodily injury with a deadly weapon necessarily places the complainant in imminent danger of serious bodily injury; therefore, the offense of deadly conduct could be established by the same or less proof than that needed to establish aggravated assault by causing bodily injury.). Thus, the first prong of the test is satisfied.

The second prong of the test requires us to ask whether there is some evidence in the record that would permit a jury "to rationally find that if appellant is guilty, he is guilty only of the lesser offense." *See Campbell v. State*, 149 S.W.3d 149, 152 (Tex. Crim. App. 2004). The court of criminal appeals has held that "a defendant is not entitled to a jury instruction on a lesser-included offense if the evidence on which the defendant is relying raises another offense that 'lies between' the requested and charged offenses." *Flores*, 245 S.W.3d at 439.[2]

We must first examine potential offenses lying between the charged offense of intentional and knowing aggravated assault and the requested offense of deadly conduct to determine if such potential offenses were intermediate lesser-included offenses for which the mental state was consistent with the reckless mental state appellant claimed qualified him for the deadly conduct instruction. *See Hudson v. State*, 394 S.W.3d 522, 525 (Tex. Crim. App. 2013). If there were any such intermediate lesser-included offenses, we must examine the evidence appellant relied on to establish recklessness to determine if that evidence would also establish any such intermediate offense. *Id.* If so, appellant would not be entitled to an instruction on deadly conduct. *Id.*

In *Hudson*, the defendant's adopted son died after being brutally beaten. *Id.* at 523. Hudson was charged with capital murder alleging she intentionally

---

[2] In *Sweed v. State*, 351 S.W.3d 63, 67 (Tex. Crim. App. 2011), the court held, "*Flores* does not stand for the proposition that a defendant should be denied a lesser-included-offense instruction simply because there was a possible 'lies between' offense instruction requested by the State that was denied." At first glance, this statement appears to be in conflict with the court's later opinion in *Hudson v. State*, 394 S.W.3d 522, 525 (Tex. Crim. App. 2013). However, the *Flores* and *Hudson* opinions appear to support the long-standing general rule that if the evidence supports the offense that "lies between" the charged offense and the requested offense, the evidence does not support a conclusion that the appellant is guilty *only* of the requested offense. *See Hudson v. State*, 415 S.W.3d 891, 897 (Tex. App.—Texarkana 2013, no pet.) (Carter, J. concurring). The court in *Sweed* rejected an automatic denial of the lesser offense if there was an offense between the charged offense and the requested lesser-included offense. *Sweed*, 351 S.W.3d at 67.

murdered the child during the course of a kidnapping. *Id.* The jury charge also contained instructions on the lesser-included offenses of murder and injury to a child. *Id.* Hudson requested an instruction on the lesser-included offense of manslaughter, which was refused. *Id.* at 524. The court of appeals reversed because Hudson did not receive an instruction on manslaughter. *Id.* The court of criminal appeals held, citing *Flores,* "Our cases indicate that, when the evidence relied upon to raise the requested lesser-included offense establishes a lesser-included offense that is greater than the one requested, then the defendant is not entitled to his requested submission." *Id.* at 525. The court held that, under the facts of that case, there were three conceivable intermediate lesser-included offenses that are greater than manslaughter, but are consistent with a culpable mental state of recklessness. *Id.* The court determined that "[a] complete analysis of whether a manslaughter instruction should have been given would, therefore, have included consideration of whether the evidence relied upon by [Hudson] would have established one of these offenses and whether such a circumstance would have prevented her from being entitled to submission of manslaughter." *Id.*

In this case, a complete analysis of whether a deadly conduct instruction should have been given must include consideration of whether the evidence relied upon by appellant would have established an intermediate lesser-included offense. "Reckless" aggravated assault is an intermediate lesser-included offense of "intentional and knowing" aggravated assault. *Hicks v. State*, 372 S.W.3d 649, 653 (Tex. Crim. App. 2012). Therefore, if reckless aggravated assault could have been established by the evidence appellant points to in his argument in favor of a deadly conduct instruction, he would not be entitled to an instruction on deadly conduct. *Hudson*, 394 S.W.3d at 525.

Anything more than a scintilla of evidence is sufficient to entitle a defendant

12

to an instruction on a lesser-included offense. *See Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011). The evidence can come from any source, and a defendant's testimony alone is sufficient to raise the issue. *Bell v. State*, 693 S.W.2d 434, 442 (Tex. Crim. App. 1985). In our review of the entire record, we cannot consider "whether the evidence is credible, controverted, or in conflict with other evidence." *Hall v. State*, 158 S.W.3d 470, 473 (Tex. Crim. App. 2005).

To support his claim for a deadly conduct instruction, appellant points to evidence that he testified it was not his intent to harm the people in front of the bar. He testified that his intent was "to prevent them from getting to me or [Miller] in the vehicle and doing us harm." Although when asked whether he was "trying to do physical harm to the people," appellant replied, "Yes, sir," appellant also testified that it was not his intent to cause harm to anyone. Appellant argues this evidence, although conflicting, shows that he was acting recklessly, but without intent to cause serious bodily injury.

If the jury believed appellant's testimony, they could have rationally found that appellant was "aware of but consciously disregarded" a substantial risk that he would harm the people in the parking lot. Appellant's evidence of recklessness is sufficient to support a jury instruction on the lesser-included offense of reckless aggravated assault. *See Bell*, 693 S.W.2d at 443 ("Thus, by selectively believing some of the . . . evidence adduced at trial and rejecting other . . . evidence, the jury could have concluded that appellant was not acting with intent to threaten imminent bodily injury, but was nonetheless . . . creating a risk that another would be placed in imminent danger of serious bodily injury."). Appellant was entitled to have the jury instructed on the lesser-included offense of reckless aggravated assault. Therefore, the evidence does not support the conclusion that if appellant is guilty he is guilty *only* of deadly conduct because he could also be guilty of

reckless aggravated assault. *See Hudson*, 394 S.W.3d at 525. The trial court did not err in refusing appellant's requested instruction. We overrule appellant's third issue.

In his fourth issue appellant urges us to reform the judgment to reflect a conviction for deadly conduct because the evidence is factually insufficient to support a conviction for aggravated assault with a deadly weapon. Because we have found appellant was not entitled to a deadly conduct instruction and we have found the evidence legally sufficient to support his conviction for aggravated assault, we overrule appellant's fourth issue.

### INEFFECTIVE ASSISTANCE OF COUNSEL

In this fifth issue appellant argues he received ineffective assistance of counsel because his trial counsel failed to (1) ask sufficient questions during voir dire, (2) make an opening statement, (3) adequately prepare the witness to testify, (4) object to hearsay, and (5) request an instruction on necessity.

We examine claims of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, appellant must prove that his trial counsel's representation was deficient, and that the deficient performance was so serious that it deprived him of a fair trial. *Id*. at 687. Counsel's representation is deficient if it falls below an objective standard of reasonableness. *Id*. at 688. This deficiency will only deprive appellant of a fair trial when counsel's performance prejudices appellant's defense. *Id*. at 691–92. To demonstrate prejudice, appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 694. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the claim of ineffectiveness. *Id*. at 697.

14

Our review of defense counsel's performance is highly deferential, beginning with the strong presumption that the attorney's actions were reasonably professional and were motivated by sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). When the record is silent as to trial counsel's strategy, we will not conclude that appellant received ineffective assistance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). In the majority of cases, the appellant is unable to meet the first prong of the *Strickland* test because the record on direct appeal is underdeveloped and does not adequately reflect the alleged failings of trial counsel. *See Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007).

A sound trial strategy may be imperfectly executed, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). "[I]solated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination." *McFarland v. State*, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992), *overruled on other grounds by Bingham v. State*, 915 S.W.2d 9 (Tex. Crim. App. 1994). Moreover, "[i]t is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Mata*, 226 S.W.3d at 430. Rather, to establish that the attorney's acts or omissions were outside the range of professionally competent

15

assistance, appellant must show that counsel's errors were so serious that he was not functioning as counsel. *See Patrick v. State*, 906 S.W.2d 481, 495 (Tex. Crim. App. 1995).

In this case appellant did not file a motion for new trial alleging ineffective assistance of counsel, or develop a record of counsel's reasons for his actions. Therefore, in addressing this issue, the record is silent as to counsel's strategy.

### *Voir Dire*

Appellant first contends that his trial counsel rendered ineffective assistance because he failed to ask sufficient questions during voir dire. Appellant argues his counsel failed to ask sufficient questions regarding self-defense, connection to law enforcement, range of punishment, or how to judge credibility. The record reflects the trial court explained the range of punishment to the venire and asked whether the veniremembers could consider the entire range. The State generally asked questions about prior experiences of friends or family members with the legal system, and asked whether they would require physical evidence to corroborate witnesses' testimony.

Appellant does not explain why an attorney with a limited amount of time for voir dire should be required to discuss some of the same topics addressed by the trial court, and we decline to hold that the failure to do so cannot be justified by any legitimate trial strategy. *See Williams v. State*, 970 S.W.2d 182, 184 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd); *see also Goodspeed*, 187 S.W.3d at 392 ("[W]e cannot conclude that the failure to ask any questions in voir dire constitutes conduct so outrageous that no competent attorney would have engaged in it.").

16

### *Failure to Make an Opening Statement*

Appellant argues his trial counsel rendered ineffective assistance by failing to make an opening statement. Whether to deliver an opening statement is entirely optional. *See Calderon v. State*, 950 S.W.2d 121, 127 (Tex. App.—El Paso 1997, no pet.) ("The option for defense counsel to deliver an opening statement immediately after the State makes its opening statement is entirely discretionary."). "Few matters during a criminal trial could be more imbued with strategic implications than the exercise of this option." *Id*. Counsel's failure to make an opening statement was not conduct "so outrageous that no competent attorney would have engaged in it." *See Goodspeed*, 187 S.W.3d at 392.

### *Failure to Object to Hearsay*

Appellant contends that trial counsel rendered ineffective assistance of counsel by failing to object to hearsay statements made by the bartender regarding what other bar patrons and the manager said to appellant, and what Miller said to the manager. Specifically, appellant argues that the bartender testified without objection that (1) five or six patrons of the bar asked appellant to move to a different pool table because appellant and Miller were almost hitting them with the pool cues; (2) the manager asked appellant to leave because the other patrons' tab was still open, and appellant did not have an open tab; (3) Miller "screamed" at the manager; (4) the manager put his hand on Miller's shoulder; and (5) appellant became angry, yelled, "get your hands off my fucking woman," and started punching the manager in the face.

Appellant argues that by failing to object to the above hearsay statements, counsel permitted the State "to make their case almost entirely with unobjected to, inadmissible, incriminating hearsay."

17

These failures to object to potentially inadmissible testimony are not sufficient, in themselves, to constitute deficient performance. *See Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999) (holding presumption of strategy not rebutted when record was "silent as to why appellant's trial counsel failed to object to the State's persistent attempts to elicit inadmissible hearsay"). Plausible professional reasons exist for not objecting to hearsay. There may have been strategic reasons for not objecting in these instances, but we may not speculate on counsel's motives in the face of a silent record. *See id.*; *see also Gamble v. State*, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.) (declining to speculate on various failures to object to admission of evidence). Accordingly, we cannot say that defense counsel's conduct was "so outrageous that no competent attorney would have engaged in it." *See Goodspeed*, 187 S.W.3d at 392.

### *Failure to Adequately Prepare Appellant to Testify*

Appellant argues that his trial counsel did not adequately prepare him to testify in his own defense. At trial, appellant testified that he intended to drive toward the individuals in the parking lot, and failed to testify that he was acting in self-defense, or his driving toward the people was an involuntary act. The record does not reflect counsel's strategy for appellant's testimony, nor does it reflect appellant's preparation for trial. Without a fully developed record, we cannot speculate on appellant's counsel's strategy. *See Lopez*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011).

### *Failure to Request Special Instruction on Necessity*

Finally, appellant asserts his counsel did not request an instruction on the defense of necessity. "Necessity" is a justification defense to a criminal charge if:

> (1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

Tex. Penal Code § 9.22.

Appellant was not entitled to an instruction on necessity because the conduct at issue was use of deadly force and the jury was charged concerning self-defense pursuant to Penal Code section 9.32. *See* Tex. Penal Code § 9.32.

When deadly force in self-defense is the conduct that is allegedly "immediately necessary" under section 9.22, the defense of necessity does not apply. *See Butler v. State*, 663 S.W.2d 492, 496 (Tex. App.—Dallas 1983), *aff'd*, 736 S.W.2d 668 (Tex. Crim. App. 1987) (prescribing this rule in a murder case); *Banks v. State*, No. 14-00-00650-CR, 2002 WL 27265, at *5 (Tex. App.—Houston [14th Dist.] Jan. 10, 2002, pet. ref'd) (not designated for publication) (applying *Butler* rationale in aggravated assault case). Therefore, when an instruction on use of deadly force in self-defense is submitted, a defendant is not entitled to an instruction on necessity. *See Butler*, 663 S.W.2d at 496.

Accordingly, appellant's counsel was not ineffective in failing to request an instruction on necessity. *See Young v. State*, 991 S.W.2d 835, 839 (Tex. Crim. App. 1999) (holding counsel was not ineffective for failing to request instruction on necessity where defendant was not entitled to it); *cf. Vasquez v. State*, 830 S.W.2d 948, 950–51 (Tex. Crim. App. 1992) (finding counsel ineffective for not seeking necessity instruction, which was the only defense available to the defendant and presented at trial); s*ee also Fitch v. State*, No. 14-06-00408-CR; 2007 WL 2447297 at *7 (Tex. App.—Houston [14th Dist.] Aug. 30, 2007, pet. ref'd) (not designated for publication) (finding in case where jury was instructed

on deadly force in self-defense, defendant is not entitled to an instruction on necessity). We overrule appellant's fifth issue.

Having overruled appellant's issues, we affirm the trial court's judgment.


/s/     Tracy Christopher
Justice


Panel consists of Justices Boyce, Christopher, and Brown.
Publish — Tex. R. App. P. 47.2(b).