**Affirmed and Opinion filed September 14, 2021.**



In The

# Fourteenth Court of Appeals

## NO. 14-20-00136-CR

**SERGIO MARTINEZ JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 182nd District Court**
**Harris County, Texas**
**Trial Court Cause No. 1632261**

## OPINION

In five issues, appellant Sergio Martinez Jr. appeals his conviction for aggravated assault of a member of his household causing serious bodily injury with a deadly weapon.[1] We conclude that the jury's finding of guilt is supported by legally sufficient evidence, appellant has not demonstrated on this record that he received ineffective assistance of counsel, the trial court did not abuse its discretion

---

[1] The State brings a cross appeal that we do not address for reasons discussed below.

in admitting challenged photographic evidence, and the trial court did not err in instructing the jury on aggravated assault by recklessly causing serious bodily injury. We affirm.

## *Background*

Appellant lived in his home with two roommates who rented bedrooms from him.[2] One evening around midnight, appellant's roommate Elber went into the kitchen. According to Elber, he went to the kitchen to get a drink of water, but appellant accused him of urinating in the kitchen sink. Appellant yelled, "[g]et the fuck out," went to his bedroom, and got a gun. Elber, in the meantime, went to his bedroom and began putting his possessions into a laundry basket.

The other roommate, Ariel, heard the men arguing loudly and came out of his bedroom. Appellant waived a gun in Ariel's face. Ariel testified that Elber was crying and then appellant held a gun to Elber's head and told him "not to be crying crocodile tears" and "to be quiet" or appellant would shoot him. When Ariel realized appellant was serious, he went to his bedroom to pack his clothes, then heard a gunshot, and locked himself in his room.

Elber was leaving the house with the laundry basket when appellant shot him in the back. Elber turned around, and appellant shot him in the face. Two officers were on patrol, received a report of gunshots nearby, and arrived at appellant's house to find Elber lying on the ground near the mailbox. The laundry basket was found outside near the front door. Appellant approached the officers with his hands up and said, "I shot him. We were arguing, and I shot him." Appellant also told the officers that the gun was inside the house in a blue bowl, which is where the officers found it. The officers also found Ariel barricaded in his

---

[2] Appellant lived next door to his parents, who both testified at trial.

bedroom. Two bullet casings were recovered inside the house, one near the front door and one behind the front door. There was blood outside the entryway leading all the way to where Elber was found. Elber survived but sustained serious injuries.

Appellant presented evidence that Elber was often intoxicated, became violent when intoxicated, carried a knife, and had threatened Ariel in the past. Appellant testified that he purchased a gun because Elber was becoming "increasingly more disruptive." According to appellant, on the night in question, he retrieved his gun from his bedroom to protect himself when Elber became aggressive after being told to leave.

Appellant said he was standing inside the doorway to his front door when Elber reached down toward the laundry basket and made a sudden movement toward him. Appellant said he did not know what was in Elber's hand. He then flinched, closed his eyes, and shot Elber. Elber purportedly said, "Ow. What did you do?" and then, "This is not going to stay like this, you know. I know where your family lives." Appellant said, "Don't mess with my family." Elber purportedly came toward appellant again, and appellant shot him in the face. Appellant said he did not aim—"[he] just shot straight out." Medical records admitted at trial stated that Elber was combative and smelled of alcohol. He had a blood alcohol concentration of .268 when he arrived at the hospital.

## *Discussion*

Appellant challenges the sufficiency of the evidence in support of the jury's findings that he possessed the requisite intent to cause serious bodily injury and did not act in self-defense. Appellant also contends that (1) he received ineffective assistance of counsel because his attorney did not request a mistake of fact jury instruction, (2) the trial court abused its discretion in admitting certain photographs of complainant, and (3) the trial court erred in instructing the jury that it could find

appellant guilty if it found that he recklessly caused bodily injury to complainant. We turn to the sufficiency challenges first.

## I. Evidence Legally Sufficient

In his first and second issues, appellant contends that the evidence is legally insufficient to prove beyond a reasonable doubt that he had the requisite intent to commit the offense and did not act in self-defense. When reviewing sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational factfinder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We do not sit as a thirteenth juror and may not substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Rather, we defer to the factfinder to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic to ultimate facts. *Id*. This standard applies equally to both circumstantial and direct evidence. *Id*. Each fact need not point directly and independently to the appellant's guilt so long as the cumulative effect of all incriminating facts is sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to the elements of the offense as defined by the hypothetically correct jury charge for the case. *Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018). The hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and

4

adequately describes the particular offense for which the defendant was tried. *Id.* The "law as authorized by the indictment" includes the statutory elements of the offense as modified by the indictment. *Id.*

**Intent**. Appellant contends that the State failed to prove he had the requisite intent to commit aggravated assault based on evidence that appellant thought "complainant was going to stab and/or hurt him." Appellant relies on the following evidence to show he did not intend to assault complainant—appellant knew complainant carried a knife, got violent when drinking, had been drinking, and was upset when appellant told him to leave. Complainant also had a very high blood alcohol concentration, and appellant testified he thought complainant might have had a knife in his hand before appellant shot him.

To prove appellant committed aggravated assault resulting in serious bodily injury, the State was required to establish that appellant "intentionally, knowingly, or recklessly cause[d] bodily injury to another." Tex. Penal Code § 22.01(a)(1); *see also Rodriguez v. State*, 538 S.W.3d 623, 629 (Tex. Crim. App. 2018) ("The line between lawful and unlawful conduct is crossed when one goes from accidentally causing bodily injury to culpably causing bodily injury—not when one goes from culpably causing bodily injury to culpably causing serious bodily injury."). A jury may infer a defendant's intent from any facts tending to prove its existence, including the method of committing the crime, the nature of the wounds inflicted on the victim, and the accused's acts, words, and conduct. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002).

Appellant himself testified that he pointed a gun at Elber and "flinched and shot" Elber while Elber was standing five to six feet away. Appellant also admitted that he fired the second shot but claimed that he did not aim before firing. This testimony alone supports a reasonable inference that appellant intentionally,

knowingly, or recklessly caused Elber's bodily injury. *See Forest v. State*, 989 S.W.2d 365, 368 (Tex. Crim. App. 1999) (holding that "firing a gun in the direction of an individual is an act clearly dangerous to human life" and thus evidence of intent to cause serious bodily injury); *see also Darkins v. State*, 430 S.W.3d 559, 565 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) ("Intent may also be inferred from the use of a deadly weapon, unless it would not be reasonable to infer that death or serious bodily injury could result from use of the weapon.").

The jury, moreover, reasonably could have inferred from appellant's shooting Elber in the back at close range that appellant intended to cause bodily injury. *See Williams v. State*, No. 14-18-00874-CR, 2020 WL 1026260, at *4 (Tex. App.—Houston [14th Dist.] Mar. 3, 2020, pet. ref'd) (mem. op., not designated for publication). Appellant also said he fired the second shot after Elber threatened his family, which supports an inference that appellant intended to hurt Elber because of that threat. That appellant may have had some concern for his safety or his family's safety does not negate the evidence of intent. *See id*. at *5.

The undisputed evidence also shows that appellant shot Elber after a heated argument arose between the two men over whether Elber urinated in the kitchen sink. Ariel testified that shortly before appellant shot Elber, appellant held the gun to Elber's head in the bedroom and told him "not to be crying crocodile tears" and "to be quiet" or appellant would shoot him. Elber testified that appellant shot him in the back while he was walking away and when he turned to ask, "what did you do?" appellant shot him again, this time in the face. The jury reasonably could have deduced that appellant shot Elber twice because he was angry. *See id*. at *4. The jury, as factfinder, was free to believe Ariel and Elber and disbelieve some or all of appellant's self-serving testimony. *See id*. (involving intent to cause complainant's death); *Darkins*, 430 S.W.3d at 566 (holding in light of all the

evidence presented at trial, the jury was free to disregard defendant's self-serving testimony about his lack of intent to cause bodily injury).

Considering all the evidence in the light most favorable to the verdict, we conclude that a rational jury could have determined beyond a reasonable doubt that appellant had the requisite intent to cause serious bodily injury. We overrule appellant's first issue.

**Self-Defense**. Appellant further argues that the evidence was legally insufficient to support the jury's implicit rejection of his claim of self-defense. Appellant argues he had reason to defend himself because (1) he thought Elber was "drunk and dangerous" and "upset at being asked to leave" and (2) Elber was known to carry a knife. In resolving this sufficiency of the evidence issue, we look not to whether the State presented evidence that refuted appellant's self-defense evidence, but to whether after viewing all the evidence in the light most favorable to the prosecution, any rational factfinder could have found against appellant on the self-defense issue beyond a reasonable doubt. *Darkins*, 430 S.W.3d at 565 (citing *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991), and *Hernandez v. State*, 309 S.W.3d 661, 665 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd)).

As discussed, appellant admitted that he shot Elber twice. Appellant points to testimony from his parents that Elber would become intoxicated often, that his mother had seen Elber with a knife, and that appellant and Ariel were both afraid of Elber. Appellant also asserts that Elber became combative when asked to leave the house and was intoxicated at that time. Appellant testified that Elber carried a knife but admitted that he did not see a knife in Elber's hand before appellant shot him either time. Appellant contends that he shot Elber after Elber "made a sudden movement and he didn't know what was in Elber's hand." Appellant also testified

7

that Elber again lunged at him after threatening appellant's family and then appellant shot him the second time. Appellant presented evidence that Ariel had texted him regarding previous threats Elber made against Ariel. Appellant testified, moreover, that Elber had beaten up a previous roommate and had come up behind someone in a bar and hit him with a bottle. Finally, appellant testified that he learned Elber had stabbed and killed a man on a train in Honduras and thrown the man off the train.

The State points to substantial evidence in support of the jury's implicit rejection of appellant's self-defense claim. Elber and Ariel both testified that appellant was angry because he thought Elber urinated in the sink and screamed at Elber to "get the fuck out." They testified that appellant pointed a gun at both of them. Ariel testified that appellant held the gun to Elber's head and threatened to shoot him. Appellant followed Elber into the bedroom with the gun. Elber testified that he was walking away when appellant shot him in the back. Elber dropped the laundry basket and turned around before appellant shot him in the face. Ariel testified that Elber was unarmed and was not aggressive while he was trying to leave the house. The location of the fired bullet casings inside the doorway, Elber's belongings just outside the doorway, and Elber's blood outside the doorway support an inference that Elber was shot outside the house. The medical records show that Elber was shot in the back. Finally, appellant told officers, "We were arguing, and I shot him." He did not tell the police at that time that he believed Elber had a knife.

We resolve any inconsistencies in the witnesses' testimony in favor of the jury's verdict in a legal sufficiency review. *See id*. at 566. Inconsistencies in testimony concern the credibility and weight to be given the testimony. *Id*. The jury has the ultimate authority to determine credibility of the witnesses. *Id*. The

8

evidence supporting appellant's claim of self-defense consisted primarily of his self-serving testimony and his parents' testimony. *See id.* The only remaining evidence supported appellant's claim that Elber had been drinking that night and that Ariel previously sent text messages to appellant stating that Elber had threatened him. Considering all the evidence in the light most favorable to the verdict, we conclude that there is sufficient evidence to support the jury's rejection of appellant's self-defense claim. *See id.* We overrule appellant's second issue.

## II.     Ineffective Assistance Not Established

In his third issue, appellant contends that he received ineffective assistance because his attorney did not request a jury instruction on mistake of fact. To prevail on his claim that he did not receive effective assistance of counsel, appellant must show by a preponderance of the evidence that (1) his counsel's performance fell below an objective standard of reasonableness and (2) but for his counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex. Crim. App. 1986) (adopting *Strickland* analysis). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. A failure to make a showing under either prong defeats a claim for ineffective assistance. *Id.* at 700.

There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To overcome this presumption, a claim of ineffective assistance must be firmly demonstrated in the record. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). In most cases, direct appeal is an inadequate vehicle for raising such a claim because the record is generally undeveloped and cannot adequately reflect the motives behind

trial counsel's actions. *Id*. The record must demonstrate that counsel's performance fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011).

Trial counsel requested a jury instruction on "accident or mistake," which the trial court denied. Appellant contends that he was entitled to an instruction on "mistake of fact" and that his trial counsel's failure to request that instruction can only be attributed to ignorance of the law. "[A]n accused has the right to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the evidence." *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999). Mistake of fact is a viable defense when "the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense." Tex. Penal Code § 8.02(a).

The record is silent as to trial counsel's reasoning for declining to seek an instruction on mistake of fact. And appellant does not point to any evidence on appeal that would support a finding that he mistakenly formed a reasonable belief about a matter of fact that would negate his culpable mental state. Appellant has failed to demonstrate on appeal that he would have been entitled to a mistake of fact instruction at trial. *Ex parte Chandler*, 182 S.W.3d 350, 356 (Tex. Crim. App. 2005) (noting to establish ineffective assistance, defendant was required to show "that the trial court would have (or should have) actually submitted [instruction on defensive issue] had it been requested"). Moreover, a motion for new trial was not filed, and trial counsel was not given an opportunity to explain his reasoning in

10

declining to seek the instruction. *See Roberts v. State*, 220 S.W.3d 521, 533–34 (Tex. Crim. App. 2007).

Considering the record as a whole, it does not affirmatively demonstrate the alleged ineffectiveness necessary to satisfy the first *Strickland* prong. *See Thompson*, 9 S.W.3d at 813. Because appellant failed to satisfy the first *Strickland* prong, we need not consider whether the requirements of the second prong were met. *See Lopez*, 343 S.W.3d at 142. We overrule appellant's third issue.

### III.    No Abuse of Discretion in Admission of Evidence

In his fourth issue, appellant contends that the trial court abused its discretion in admitting two photographs of complainant's incision taken after he had surgery to remove the bullet from his back. According to appellant, the probative value of this evidence was substantially outweighed by a danger of unfair prejudice under Texas Rule of Evidence 403.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009); *Foyt v. State*, 602 S.W.3d 23, 47 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd). If the trial court's ruling falls within the zone of reasonable disagreement, we will affirm that decision. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003); *Foyt*, 602 S.W.3d at 47. "Generally, a photograph is admissible if verbal testimony as to matters depicted in the photographs is also admissible." *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007)

"Rule of Evidence 403 prohibits the admission of evidence that is substantially more prejudicial than probative in criminal trials," including photographs. *Reese v. State*, 33 S.W.3d 238, 239 (Tex. Crim. App. 2000). Under Rule 403, a "court may exclude relevant evidence if its probative value is

11

substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. In conducting a Rule 403 analysis, courts must balance (1) the inherent probative force of the proffered evidence and (2) the proponent's need for that evidence, against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency to confuse or distract the jury from the main issues, (5) any tendency to be given undue weight by the jury, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or be cumulative of other evidence. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006); *Foyt*, 602 S.W.3d at 48.

All evidence tends to be prejudicial to one party or the other. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012); *Foyt*, 602 S.W.3d at 48. Only "unfair" prejudice provides the basis for exclusion of relevant evidence. *Montgomery v. State*, 810 S.W.2d 372, 378 (Tex. Crim. App. 1990); *Foyt*, 602 S.W.3d at 48. Prejudice is "unfair" if it has an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Montgomery*, 810 S.W.2d at 378; *Foyt*, 602 S.W.3d at 48.

We turn to whether the evidence was unfairly prejudicial under the Rule 403 balancing test. As to the first and second factors, the State was required under the indictment to show that appellant caused serious bodily injury to complainant by shooting him with a deadly weapon, a firearm. The probative value of the evidence was to show the severity of complainant's gunshot wounds and to show that the wounds were caused by a deadly weapon. *See, e.g., Young v. State*, 629 S.W.2d 247, 252 (Tex. App.—Fort Worth 1982) ("The indictment charged appellant with 'using and exhibiting a deadly weapon to-wit, a knife' while committing

12

aggravated robbery. It was necessary for the State to show that the knife in fact under these circumstances, was a deadly weapon."), *appeal dism'd*, 465 U.S. 1016 (1984).

The trial court reasonably could have concluded that the evidence would not unduly tend to lead the jury to make an improper decision. Appellant contends that the photographs show a "gaping hole" and that complainant "appears to have been butchered." We disagree. The photographs are graphic, but they show a clean incision that was made during surgery to repair major damage to complainant's internal organs as a result of the gunshot to his back. Red tissue and the colostomy bag attached to complainant's abdomen are visible, but the photographs do not show blood or any internal organs. Complainant testified that the incision was the result of the operation to repair damage caused by the gunshot. A trial court generally does not abuse its discretion in admitting pictorial evidence that helps the jury understand the testimony and the injuries sustained by the victim. *Morgan v. State*, No. 14-99-01148-CR, 2002 WL 27539, at *7 (Tex. App.—Houston [14th Dist.] Jan. 10, 2002, no pet.) (not designated for publication) (citing *Bailey v. State*, 532 S.W.2d 316, 321 (Tex. Crim. App. 1975) (holding photographs taken after autopsy surgery are admissible to show nature of injuries unless "results of surgery have obfuscated the results of the crime")).

The trial court likewise reasonably could have concluded that the evidence did not tend to confuse or distract the jury from the main issues in the case—the photographs show the nature of the injuries sustained by complainant as a result of having been shot. Finally, presenting the evidence did not consume an inordinate amount of time, and the evidence was not cumulative of other evidence. The State did not offer photographs of the actual bullet wounds, and other photographs admitted at trial showed complainant wrapped in bandages in the hospital. The

State did not present testimony from a medical expert describing the full extent of complainant's injuries.

The trial court, after balancing the Rule 403 factors, reasonably could have concluded that the probative value of the photographs was not substantially outweighed by the countervailing factors specified in the rule. *See Gigliobianco*, 210 S.W.3d at 642-43; *Foyt*, 602 S.W.3d at 49. We conclude the trial court did not abuse its discretion in admitting the evidence. We overrule appellant's fourth issue.

## IV.  Jury Charge Instruction Proper

In his fifth and final issue, appellant contends that the trial court erred in instructing the jury that it could find appellant guilty as charged in the indictment if it found that appellant committed aggravated assault by recklessly causing complainant serious bodily injury. Appellant was charged with aggravated assault by intentionally or knowingly causing complainant serious bodily injury. At the charge conference, the State requested an instruction on the culpable mental state of recklessness. The prosecutor argued that aggravated assault by recklessly causing serious bodily injury is a lesser included offense of aggravated assault by intentionally or knowingly causing serious bodily injury and the evidence raised aggravated assault by recklessly causing serious bodily injury. Defense counsel objected on the basis that the lesser included offense instruction would violate due process because the indictment did not allege recklessness. The trial court granted the State's request.

Appellant cites *Reed v. State*, 117 S.W.3d 260 (Tex. Crim. App. 2003) 2003), to support his argument that it is reversible error to submit a charge on recklessness if the indictment does not allege recklessness as a culpable mental state because it allows for conviction of a broader offense than that alleged in the indictment. The defendant in *Reed*, as here, was charged with aggravated assault

14

by intentionally or knowingly causing serious bodily injury to the victim. *Id*. at 261. The trial court instructed the jury in a single application paragraph to convict if it found beyond a reasonable doubt that the defendant intentionally or knowingly or recklessly caused serious bodily injury to the victim. *Id*. The Court of Criminal Appeals held that the inclusion in the jury charge of a lower culpable mental state than charged in the indictment could "lead to the possibility that the defendant was convicted of an offense that is allowed under the statute but was not alleged in the indictment." *Id*. at 263. Thus, the jury charge improperly expanded the indictment. *Id*. at 265.

The *Reed* court distinguished a situation involving a lesser included offense. *Id*. at 263. The court noted,

> The State admits that the way the charge in this case was worded did not follow the usual manner by which the issue of a lesser included offense is submitted to the jury. A charge containing a lesser included offense usually says that the jury can consider a lesser included offense if the defendant is acquitted of the charged offense. However, in this case, no lesser included offense instructions were requested by the parties.

*Id*.

In *Hicks v. State*, 372 S.W.3d 649 (Tex. Crim. App. 2012), the defendant was also charged with aggravated assault by intentionally or knowingly causing bodily injury. *Id*. at 655. The trial court instructed the jury that it could find appellant guilty of the lesser included offense of aggravated assault by recklessly causing bodily injury. *Id*. The *Hicks* court noted that the *Reed* case was distinguishable "because the indictment [in *Reed*] alleged only the culpable mental states of 'intentional' or 'knowing,'" but the jury charge included a "single application paragraph [that] read 'intentionally or knowingly or recklessly cause[d] bodily injury.'" *Id*. at 657. "This was impermissible because it allowed for

15

conviction of a broader offense than that alleged in the indictment." *Id*. The *Hicks* case was different because evidence at trial raised the issue of aggravated assault by recklessly causing bodily injury based on the defendant's testimony that the gun accidentally went off during a struggle, causing the victim's injuries, and the trial court accordingly instructed the jury that it could find the defendant guilty of the lesser included offense of aggravated assault by recklessly causing bodily injury. *Id*. at 658. The trial court's inclusion of that instruction as a lesser included offense was proper. *Id*.

Here, similarly, appellant presented evidence that would support a finding of the lesser included offense of aggravated assault by recklessly causing serious bodily injury. Appellant testified that he flinched, closed his eyes, and "just raised [his] hand and shot," and as to the second shot, that he "did not aim at the eye or anything" but "just shot straight out," thus raising the possibly of recklessness. The jury charge did not present the jury with a single application paragraph, but presented the jury with the option to convict appellant of recklessly causing serious bodily injury to complainant as a lesser included offense, as follows:

> Now, if you find from the evidence beyond a reasonable doubt that . . . the defendant . . . did then and there unlawfully, **intentionally or knowingly** cause serious bodily injury to [complainant] . . . , then you will find the defendant guilty of aggravated assault of a household member, as charged in the indictment.

> Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, or if you are unable to agree, you will next consider whether the defendant is guilty of **the lesser offense** of aggravated assault of a household member.

> Now, if you find from the evidence beyond a reasonable doubt that . . . the defendant . . . did then and there unlawfully, **recklessly** cause serious bodily injury to [complainant] . . . , then you will find the defendant guilty of aggravated assault of a household member, as charged in the indictment.

(Emphasis added.)

This case is like *Hicks* and not like *Reed*. The trial court properly instructed the jury that if it did not find appellant guilty of aggravated assault by intentionally or knowingly causing serious bodily injury, it could find appellant guilty of the lesser included offense of aggravated assault by recklessly causing serious bodily injury. *See id.*; *see also Gonzalez v. State*, 610 S.W.3d 22, 26 (Tex. Crim. App. 2020) ("Inclusion of the culpable mental state of recklessness in a jury charge application paragraph for aggravated assault causing bodily injury is error when recklessness is omitted from the indictment. Such error is avoided, however, if reckless aggravated assault is instead included as a standalone lesser-included-offense instruction."); *Darkins*, 430 S.W.3d at 568 ("'Reckless' aggravated assault is an intermediate lesser-included offense of 'intentional and knowing' aggravated assault."). We overrule appellant's fifth issue.

## V.    State's Cross Appeal Not Addressed

In a cross appeal, the State challenges the trial court's inclusion in the jury charge of an instruction on "apparent danger." The State concedes that courts of appeals generally cannot address cross appeals by the State unless the conviction is reversed.

Article 44.01(c) permits the State to "cross-appeal" a separate ruling of law by the trial judge when the defendant is convicted and appeals his judgment. Tex. Code Crim. Proc. art. 44.01(c). An appellate court is not permitted to address the State's cross appeal "if the State would not be able to implement a decision in its favor on that issue." *Pfeiffer v. State*, 363 S.W.3d 594, 601 (Tex. Crim. App. 2012). The State generally will not be able to benefit from a favorable decision "[i]f the defendant is granted no relief and no retrial will therefore be held." *Id.* This is a "bright-line rule": appellate courts may not address the State's cross

17

appeals in such cases because we "are without authority to render advisory opinions." *See id.* Usually, we may address a State cross appeal only if the defendant prevails on appeal and we remand the case for further proceedings. *See id.*

Here, the State has not demonstrated that it would be able to implement a decision in its favor on this issue absent a reversal and remand for further proceedings. We cannot address a cross appeal "in which the State merely requests a directive as to language or reasoning of the lower court that does not impact the ultimate decision." *Id.* at 601 n.32. That is precisely the situation here: the State would not benefit in the instant case from an opinion that the trial judge erred by giving the challenged jury instruction because we are affirming appellant's conviction. *See Seghelmeble v. State*, 390 S.W.3d 576, 583 (Tex. App.—Dallas 2012, pet. ref'd). Thus, the State seeks an advisory opinion in these circumstances. *See id.* We are not permitted to address the State's cross appeal.

### *Conclusion*

We conclude that the jury's guilty finding is supported by legally sufficient evidence, appellant has not demonstrated on this record that he received ineffective assistance of counsel, the trial court did not abuse its discretion in admitting photographic evidence, and the trial court did not err in instructing the jury on aggravated assault by recklessly causing serious bodily injury. We affirm the judgment of the trial court.

/s/    Frances Bourliot
       Justice

Panel consists of Justices Wise, Bourliot, and Wilson.
Publish — TEX. R. APP. P. 47.2(b).