

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-14-00202-CR

ANTHONY DEWAYNE COOPER                                                    APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY
TRIAL COURT NO. 1363068R

----------

## MEMORANDUM OPINION[1]

----------

Appellant Anthony Dewayne Cooper appeals his conviction for aggravated sexual assault of a child.[2] In two points, he contends that his trial counsel was ineffective for not discussing the right against compelled self-incrimination during

---

[1] *See* Tex. R. App. P. 47.4.

[2] *See* Tex. Penal Code Ann. § 22.021(a)(1)(B)(iii), (a)(2)(B) (West Supp. 2014).

voir dire and that the trial court erred by excluding evidence about "specific instances of sexual behavior by the complaining witness." We affirm.

## Background Facts[3]

When A.P. (Angela)[4] was approximately thirteen years old, she and her father went to stay at her aunt's house in the south side of Fort Worth. Angela's aunt; the aunt's boyfriend, appellant; and other children lived in that house. Angela referred to appellant as her uncle.

During Angela's stay, her aunt had an asthma attack and went to a hospital. That night, Angela fell asleep on the floor of her cousins' room. Appellant eventually entered the room and led Angela to the room that he shared with Angela's aunt. He took Angela's clothes off, climbed on top of her, and penetrated her sexual organ with his penis, which she referred to as his "middle." Appellant went "[u]p and down" on Angela for about ten minutes, stopped doing so, and gave her a towel "to wipe the bed off."

Angela then left appellant's room, returned to her own room, and went back to sleep. She did not immediately tell anyone what had happened because she was frightened.

---

[3]Appellant does not challenge the sufficiency of the evidence to support his conviction. In this section, we summarize the evidence by presenting it in the light most favorable to the jury's finding of appellant's guilt.

[4]To protect A.P.'s anonymity, we use an alias. *See* Tex. R. App. P. 9.10(a)(3); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

Months later, while Angela was at school, she disclosed what appellant had done to her. When Angela's mother confronted appellant about having sex with Angela, appellant ran away.

Angela went to a hospital, where she told a sexual assault nurse examiner that she had been raped and that "white stuff" had come out of appellant's penis. Angela also gave a videotaped forensic interview with Joy Hallum, who worked for a child advocacy center. During the interview, Angela provided Hallum with "sensory details" about her outcry; for example, Angela said that from the sexual assault, she experienced burning and bleeding in her vaginal area.

When several police officers who were driving patrol cars attempted to arrest appellant, he led them on a high-speed, long-range chase. Appellant's indictment for aggravated sexual assault included a paragraph alleging that he had been previously convicted of another sexual offense with a child. Appellant pled not guilty, but after considering the parties' evidence and arguments, the jury found him guilty. The trial court found the indictment's enhancement paragraph to be true and sentenced appellant to confinement for life.[5] He brought this appeal.

**Alleged Ineffective Assistance of Counsel**

In his first point, appellant contends that his trial counsel was ineffective for not discussing appellant's right against compelled self-incrimination with

---

[5]*See* Tex. Penal Code Ann. § 12.42(c)(2)(A)(i), (B)(ii) (West Supp. 2014).

veniremembers during voir dire.[6]  To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that his counsel's representation was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013).

An ineffective-assistance claim must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).  Direct appeal is usually an inadequate vehicle for raising an ineffective-assistance-of-counsel claim because the record is generally undeveloped.  *Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012); *Thompson*, 9 S.W.3d at 813–14.  In evaluating the effectiveness of counsel under the deficient-performance prong, we look to the totality of the representation and the particular circumstances of each case.  *Thompson*, 9 S.W.3d at 813.  The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.  *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava*, 415 S.W.3d at 307.  Review of counsel's

---

[6]Appellant did not testify in front of the jury at trial.  On appeal, he cites a federal and a state constitutional provision that relate to his right to not testify. *See* U.S. Const. amend. V; Tex. Const. art. 1, § 10.  We apply one standard to both provisions.  *See Carroll v. State*, 68 S.W.3d 250, 253 n.3 (Tex. App.—Fort Worth 2002, no pet.) (op. on remand) ("The self-incrimination clause of Article I, Section 10 of the Texas Constitution gives no greater rights than does the Fifth Amendment of the United States Constitution.").

4

representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct was not deficient. *Nava*, 415 S.W.3d at 307–08.

It is not appropriate for an appellate court to simply infer ineffective assistance when counsel's reasons for failing to do something do not appear in the record. *Menefield*, 363 S.W.3d at 593. Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Id.* If trial counsel is not given that opportunity, we should not conclude that counsel's performance was deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308.

Appellant correctly contends that his trial counsel, who has not had an opportunity to explain his strategy,[7] did not discuss appellant's right against compelled self-incrimination with veniremembers during voir dire. The record establishes, however, that the trial court and the State thoroughly discussed this issue with veniremembers. The following exchange occurred between the trial court and veniremembers:

> [THE COURT:] [T]he Defendant in any criminal case is not required
> to prove himself innocent. If the Defendant does not choose to
> testify, you may not consider that fact as evidence of guilt, nor may
> you in your deliberations comment on or in any way allude to that

---

[7]Appellant filed a motion for new trial but did not contend in the motion that counsel was ineffective.

fact. And does everybody know what this right is? The right to remain silent. What do we call that?

VENIREPANEL: Fifth Amendment.

THE COURT: Your Fifth Amendment right. Yes. It's enshrined in our Bill of Rights of our Constitution. Does everybody agree that's a very important Constitutional right?

VENIREPANEL: Yes.

THE COURT: Does anybody feel that that right should be taken away from a citizen?

VENIREPANEL: No.

THE COURT: So once again, we frequently hear jurors who come in and say, Well, you know, if my two children had a fight, I want to hear both sides of the fight. I want to hear each party tell their side of the story. . . . However, we are in a different situation in a courtroom. In a courtroom the Rule of law applies and the Rule of law under our Constitution is that every person accused has a Fifth Amendment right to not testify. And if he elects to exercise that right and not testify, you may not consider that. You may not in any way hold that against him.

So once again I need to ask you, can everybody at this point afford this Defendant his Fifth Amendment right and continue to afford him that right throughout this trial if he elects not to testify?

VENIREPANEL: Yes.

THE COURT: Is there anybody who says, no, I cannot be fair in that regard. I would hold that against him. I cannot afford him his Constitutional right to remain silent. Does anybody feel that way? I see no hands.[8]

Similarly, during the State's questioning of the jury panel, the following

exchange occurred:

---

[8]We cannot agree with appellant's characterization of this exchange as "cursory" questioning.

6

[THE STATE:] Fifth Amendment. A person has an absolute [right], from anything from a traffic ticket all the way up to capital murder, to merely be present for their trial. That's all a Defendant in our court system is required to do for criminal charges is to be present. . . . Which means that if they elect not to testify at their trial, the jury will be instructed by the Court that they cannot and must not use that failure to testify for any reason whatsoever in coming to a decision or a verdict. Does everyone understand that?

VENIREPANEL: Yes.

[THE STATE]: It's not much of a right if it doesn't get afforded to you. In other words, if people won't allow you to have it, it's not what it is, which is a right. Okay. So again, some of you are sitting out there thinking in your little heads, I understand that. I understand that's what the law is. The Judge has told me. [The prosecutor] has now told me. I get it. I don't like it. Because if it was me, I would want to get up there or, my gosh, it seems to me that anybody would want to get up there and tell their side of the story. And we always have people who feel that way and it's perfectly fine if you feel that way. You are entitled to have that opinion and that strong feeling. But if there is any of you out there who do think or feel that way, we need to know about it right now. Anybody? I always have at least one person. Really? Nobody. Seventy good people in here that are, like, I can follow the law. That's great. Okay.

Soon thereafter, one veniremember, who did not serve on the jury, said that "it would be nice to hear" appellant testify but then stated that she could follow the court's instruction to not use appellant's decision to not testify against him.

During appellant's voir dire, his counsel discussed the presumption of appellant's innocence; the State's burden to prove his guilt; and, at most length, issues relating to the credibility of witnesses who are children. Having heard the trial court and the State thoroughly discuss appellant's right against compelled self-incrimination with the veniremembers, his counsel could have reasonably

concluded that his time with the veniremembers, which spanned more than an hour, was better spent by discussing these other issues.[9]

We cannot conclude that counsel's unexplained decision to not retread the ground already covered by the trial court and the State comprised conduct that was "so outrageous that no competent attorney would have engaged in it." *See Nava*, 415 S.W.3d at 308. Thus, we conclude that appellant has not met his burden to show that his counsel's representation was constitutionally deficient.[10] *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Nava*, 415 S.W.3d at 307; *Goodspeed*, 187 S.W.3d at 392 ("Defense counsel's articulated reason for declining to ask questions—that the prosecution's questioning adequately covered the defense's concerns—could be a legitimate trial strategy under the appropriate circumstances."); *Darkins v. State*, 430 S.W.3d 559, 570 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) ("Appellant does not explain why an

---

[9]We also note that the trial court's charge to the jury stated in part,

> Our law provides that a defendant may testify in his own behalf if he elects to do so. This, however, is a privilege accorded to a defendant, and in the event he elects not to testify, that fact cannot be taken as a circumstance against him. In this case the Defendant has elected not to testify and you are instructed that you cannot and must not refer or allude to that fact throughout your deliberations or take it into consideration for any purpose whatsoever as a circumstance against him.

[10]Because we hold that appellant has not established that counsel's representation was constitutionally deficient, we need not examine whether appellant suffered prejudice. *See* Tex. R. App. P. 47.1; *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069; *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

attorney with a limited amount of time for voir dire should be required to discuss some of the same topics addressed by the trial court, and we decline to hold that the failure to do so cannot be justified by any legitimate trial strategy."); *Williams v. State*, 970 S.W.2d 182, 184 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) ("In light of the trial judge's extensive participation in the voir dire examination, we cannot characterize the decision of Williams's counsel to forego further questioning as anything other than trial strategy.").  We overrule appellant's first point.

### Exclusion of Evidence

In his second point, appellant contends that the trial court erred by not allowing him to ask Hallum questions about another sexual experience involving Angela.  Before the parties' presentation of evidence began, the State presented a motion in limine, asking the trial court to instruct appellant's counsel to approach before eliciting any testimony concerning sexual conduct by Angela that was unrelated to appellant's charge.  The court granted the motion.

Later, after holding a lengthy hearing outside of the jury's presence, the trial court admitted testimony concerning another sexual event involving Angela. The court held that evidence of the event was admissible, even over the general exclusion of such evidence under rule of evidence 412, because it could

9

potentially show Angela's motive to accuse appellant of a sexual crime and its probative value outweighed its danger of unfair prejudice.[11]

In front of the jury, Kimberly Jenkins, an assistant principal at a Fort Worth school, testified that one day in April 2013, she noticed that Angela was not in her usual classroom. She eventually saw Angela, along with three boys, leaving a band room that they should not have been in. Angela's hair and clothes had dust on them, and to Jenkins, the band room "smelled like sex." Based on her investigation, Jenkins concluded that Angela had been having sex in the band room, and Angela received discipline for doing so.

Jenkins contacted Angela's grandmother, who began traveling to the school. In the meantime, Jenkins reprimanded Angela. When Angela's grandmother arrived, she reprimanded Angela for ten to fifteen minutes. At that point, Angela, for the first time to anyone, disclosed appellant's sexual assault of her. According to Jenkins, she and Angela's grandmother then viewed Angela as a victim and stopped reprimanding her.

Although the trial court admitted this testimony from Jenkins and similar testimony from another employee of the school, the court denied appellant's request to recall Hallum and to ask her about the impact that the event could have on her testimony. The following colloquy occurred:

> [DEFENSE COUNSEL:] Ms. Hallum testified about details in the complaining witness's forensic interview that . . . she said gave

---

[11]*See* Tex. R. Evid. 412(b)(2)(C).

10

credibility and we talked about some of those in front of jury. The sensory and the peripheral details. One of the detail[s] that . . . she mentioned specifically was the fact that the complaining witness had knowledge of sexual activity and how it takes place. I did not go into that because I wanted [to do] it, obviously, outside the presence of the jury. But I believe that I ought to be allowed to ask her as well that knowledge does not necessarily mean that this allegation is true, all that it means is that she had prior knowledge of sexual activity.

THE COURT: And I think you previously explored that through your cross-examination and so I don't think there's any additional cross-examination that you would be entitled to, beyond what you've already asked her. Because you did ask those questions.

. . . .

[DEFENSE COUNSEL]: . . . . I believe that what Ms. Hallum testified to was that there were details in the complaining witness's statement that indicated she was credible, things like . . . the fact that she knew what burning and bleeding was like and she could accurately describe that. One of the other details was sexual activity and Ms. Hallum stated that her -- that the complaining witness's information regarding alleged sexual activity indicated knowledge of sexual activity. *What I would like to go [into] and -- and I believe that I'm – I'm not being allowed to, is to ask the question, if she has knowledge of sexual activity[,] [t]hat does not necessarily mean that it came from an encounter with the Defendant, Mr. Cooper. That it's possible that it could have come from somewhere else.*

. . . .

THE COURT: And the Court is not going to permit those questions and is not going to permit cross-examination beyond what the Court previously permitted. [Emphasis added.]

On appeal, appellant argues that the trial court abused its discretion by refusing to allow him to recall Hallum to testify about the "same line of questioning" that he had broached with Jenkins. He contends,

11

In this case, Appellant wanted to pursue further questioning of Ms. Hallum but was restricted from doing so pursuant to a motion in limine which was granted at the beginning of trial which prevented him from doing so. However, once the Rule 412 hearing was concluded and the Court allowed such evidence to be heard in the presence of the jury, to disallow this same line of questioning from a different witness is in direct conflict with the Court's ruling.

Assuming (without deciding) that the trial court erred by denying appellant's request to recall Hallum and to ask her about the effect that Angela's other sexual conduct would have on her testimony, that error cannot justify reversal of appellant's conviction unless the record demonstrates harm. Appellant argues on appeal that the trial court's ruling violated rule of evidence 412 but does not argue that the ruling affected his constitutional rights. Thus, we apply rule of appellate procedure 44.2(b) and reverse only if the error affected appellant's substantial rights. *See* Tex. R. App. P. 44.2(b).

An error affects a substantial right when it has a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). In making this determination, we review the record as a whole, including the character of the alleged error and how it might be considered in connection

with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

As the trial court stated when denying appellant's request to recall Hallum, appellant had already asked her about whether Angela's prior experiences could have provided sensory details that Angela later revealed during the interview with Hallum. The following exchange occurred upon questioning of Hallum by defense counsel:

> Q. Would it be fair to say that somebody could take . . . peripheral details from another incident and use those to make a lie appear more truthful? Is that fair to say?
>
> A. [It's] fair to say.
>
> Q. Let's say, if I spend the night at somebody's house on a regular basis and I've done that and I know where people sleep, then I'm able to recount that pretty easily; . . . wouldn't you agree?
>
> A. You could, yes.
>
> Q. The . . . sensory details as well, I believe, [the State] asked you about like the burning and the bleeding and those sorts of things. Were those sensory details or am I misunderstanding?
>
> A. That's sensory details, yes.
>
> *Q. And again, if that's happened to her at some point she knows how that feels; is that right?*
>
> *A. Yes.*
>
> *Q. Doesn't . . . mean[] it had to have happened on this alleged day necessarily; is that right?*
>
> *A. Yeah.*
>
> . . . .

*Q. If something happen[s] to you on another occasion, then you know how it feels, right?*

*A. Yes.*

*Q. So if you have burning on another occasion, you know what burning feels like?*

*A. Yes.*

*Q. Is that fair to say? And then you can accurately describe it?*

*A. Yes. [Emphasis added.]*

This colloquy approximated the subject that appellant proposed to discuss with Hallum on recall: that if "[Angela had] knowledge of sexual activity[,] [t]hat does not necessarily mean that it came from an encounter with [appellant]." Because Hallum's excluded proposed testimony was the substantial equivalent of testimony that she had already given, we conclude that the alleged error did not affect appellant's substantial rights and cannot justify reversal. *See* Tex. R. App. P. 44.2(b); Tex. R. Evid. 103(a); *Mosley v. State*, 983 S.W.2d 249, 258 (Tex. Crim. App. 1998) (op. on reh'g) (explaining that harm from the erroneous exclusion of evidence may be mitigated by the admission of evidence similar to what the defendant wished to offer), *cert. denied*, 526 U.S. 1070 (1999); *Womble v. State*, 618 S.W.2d 59, 62 (Tex. Crim. App. [Panel Op.] 1981) ("This court has consistently held reversal is not required by exclusion of evidence where the same testimony was later admitted without objection."); *see also Watrous v. State*, Nos. 02-11-00168-CR, 02-11-00169-CR, 02-11-00170-CR, 2012 WL 2428528, at *8 (Tex. App.—Fort Worth June 28, 2012, pet. ref'd) (mem. op., not

14

designated for publication) ("Because [witnesses] testified to substantially the same evidence that was excluded elsewhere . . . , assuming that the trial court's rulings were erroneous, any error was rendered harmless."). We overrule appellant's second point.

## Conclusion

Having overruled both of appellant's points, we affirm the trial court's judgment.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  March 26, 2015

15