

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00085-CR

———————————————

MITCHELL SEAN BABINEAUX, Appellant

V.

THE STATE OF TEXAS

On Appeal from County Criminal Court No. 1
Tarrant County, Texas
Trial Court No. 1659321

Before Sudderth, C.J.; Bassel and Walker, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I.  Introduction

In a single point, Appellant Mitchell Sean Babineaux challenges the sufficiency of the evidence to support a conviction for misdemeanor "assault[–]bodily injury to a family member or household member or [person] with whom [he] had a dating relationship."  We hold that the evidence is sufficient to support Appellant's conviction and therefore affirm the judgment.

## II.  Procedural and Factual Background

Appellant was charged by information with assaulting Complainant with whom he was in a dating relationship.  A jury found Appellant guilty of the offense and assessed his punishment at ninety days' confinement and no fine.  The jury also recommended that the sentence be probated.  The trial court pronounced a sentence of ninety days' confinement in the Tarrant County Jail and then suspended the sentence and placed Appellant on community supervision for twenty-four months.

The following bullet points paraphrase and supplement a similar itemized list in the State's brief that details the evidence supporting Appellant's conviction for assault:

- Shortly after Complainant met Appellant, they began dating.

- Complainant moved in with Appellant within a couple of months after they began dating.

- A few months into the relationship, Complainant and Appellant went out for dinner and drinks with friends to celebrate a friend's birthday.

• While they were at a bar, Appellant became angry with Complainant for dancing with a friend. Appellant left the bar and returned home without Complainant.

• When Complainant returned home, she was locked out of the house and had to beat on the front door to wake Appellant so that he would let her in.

• Appellant awoke and opened the front door, and Complainant pushed her way into the house.

• Once inside, Complainant and Appellant began arguing in the master bedroom.

• Complainant laid down on the bed during the argument, and Appellant turned the mattress over.

• While Complainant was sitting on the floor, Appellant grabbed her by the back of her hair and wrapped his hand around her hair to obtain a solid grip.

• Appellant pulled Complainant across the carpet in the bedroom into the kitchen, a distance of approximately ten feet.

• Complainant put one hand down on the ground in an attempt to stop Appellant from pulling her; she used her other hand to grab Appellant's wrist.

• Complainant grabbed at Appellant's wrist in an effort to alleviate the pain caused by Appellant's dragging her by her hair.

• Complainant felt that Appellant had acted intentionally in dragging her by the hair.

3

• Complainant received a scratch on her wrist when she was attempting to get Appellant to stop dragging her.

• While Appellant dragged her, a few of the artificial nails that Complainant was wearing were torn off.

• When one of the artificial nails was torn off, it also pulled off Complainant's real fingernail.

• Complainant's real fingernail was pulled off down to the nailbed, causing Complainant's finger to bleed.

• Complainant was in pain when her fingernails were torn off, and the pain continued for weeks after the assault.

• Due to Appellant's pulling Complainant's hair, her head was sore for a week or two after the assault.

• Complainant felt that her arms had been bruised while being dragged.

• Following the assault, blood was found on the door leading from the house to the garage; Complainant stated that the blood was from having her fingernails torn off.

• Appellant testified that Complainant had assaulted him; that he had grabbed Complainant to stop the assault; and that he had never touched her hair, dragged her, or assaulted her.

# III. Analysis

## A. Standard of Review

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences

in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

To determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by a hypothetically correct jury charge to the evidence adduced at trial. *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021); *see also Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("The essential elements of an offense are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Hammack*, 622 S.W.3d at 914. The law as authorized by the indictment means the statutory elements of the offense as modified by the charging instrument's allegations. *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021); *see Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded[] and not any alternative statutory elements."). A victim's testimony is sufficient, in and of itself, to provide sufficient evidence to support a conviction. *See Marshall v. State*, 479 S.W.3d 840, 845 (Tex. Crim. App. 2016).

6

## B. Elements of the Offense

Appellant was convicted of a Class A misdemeanor assault under Penal Code Section 22.01(a)(1), which sets out the elements of the offense: "[a] person commits an offense if the person: (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse." Tex. Penal Code Ann. § 22.01(a)(1). There is sufficient evidence to support each element of the offense.

### 1. The evidence is sufficient to establish that Appellant was the one who committed the charged offense.

"The State must prove that the accused is the person who committed the crime charged" and may do so by means of direct or circumstantial evidence. *Bin Fang v. State*, 544 S.W.3d 923, 927–28 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Complainant identified Appellant in open court and testified that he was the person who had assaulted her.

### 2. The evidence is sufficient to establish that Appellant acted with the necessary culpable mental state.

In accordance with the elements of the offense stated in Section 22.01(a)(1) of the Penal Code, the information in this case charged that Appellant "did intentionally, knowingly, or recklessly cause bodily injury to" Complainant. *See* Tex. Penal Code Ann. § 22.01(a)(1). The jury charge conformed to both the Penal Code and the information by stating that "a person commits the offense of assault if the person intentionally, knowingly[,] or recklessly causes bodily injury to another." *See id.* Moreover, the charge defined the statutory term "knowingly" as follows: "[a] person

7

acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." Thus, the charge properly defined "knowingly" and highlighted the fact that assault is a result-oriented offense:

> "Assault by causing bodily injury is a result-oriented offense." *Darkins v. State*, 430 S.W.3d 559, 565 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd); *see also Landrian v. State*, 268 S.W.3d 532, 536 (Tex. Crim. App. 2008). Accordingly, the State had to prove that appellant caused the result of bodily injury with the requisite culpable mental state. *See Darkins*, 430 S.W.3d at 565. A person acts knowingly with respect to the result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result. Tex. Penal Code [Ann.] § 6.03(b). Proof of a culpable mental state generally relies on circumstantial evidence. *Gilder v. State*, 469 S.W.3d 636, 639 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (citing *Lane v. State*, 763 S.W.2d 785, 787 (Tex. Crim. App. 1989)); *see also Balderas*[ *v. State*], 517 S.W.3d [756,] 766 [(Tex. Crim. App. 2016)]. Intent may be inferred from appellant's words, acts, and conduct. *See Gilder*, 469 S.W.3d at 639.

*Bin Fang*, 544 S.W.3d at 928.

The record contains sufficient evidence to support an inference that Appellant acted knowingly in his action of wrapping his hand around Complainant's hair and dragging her across the floor. A jury could clearly infer from this act that Appellant was aware that his conduct would be reasonably certain to cause bodily injury to Complainant.

Appellant claimed that he did not commit the assault. That denial left the issue of whether the assault occurred as one for the jury to resolve, and the jury decided it adversely to Appellant—as it was free to do. *See Sharp v. State*, 707 S.W.2d 611, 614

8

(Tex. Crim. App. 1986). Because the evidence—when viewed in the light most favorable to the verdict—supports the jury's finding that the assault took place and because the act of assault itself supports an inference that Appellant acted knowingly, the evidence is sufficient to establish that Appellant acted with the necessary culpable mental state.

### 3. The evidence is sufficient to establish that Appellant caused bodily injury to Complainant.

The only argument that Appellant raises regarding the sufficiency of the evidence to support the bodily-injury element of the offense is that "[t]here is no evidence that [Complainant] suffered any pain from the incident." This conclusory argument ignores both the standard for determining bodily injury and the evidence contained in the record.

For purposes of the Texas Penal Code,

> "[b]odily injury" means physical pain, illness, or any impairment of physical condition. [Tex. Penal Code Ann.] § 1.07(8) . . . . "Any physical pain, however minor, will suffice to establish bodily injury." *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012). Evidence of a cut or bruise is sufficient to show bodily injury. . . . *Bin Fang* . . . , 544 S.W.3d [at] 928 . . . ; *see Shah v. State*, 403 S.W.3d 29, 34–35 (Tex. App.— Houston [1st Dist.] 2012, pet. ref'd) (sufficient evidence of bodily injury [existed] because the court could reasonably infer that a "lesion on the bridge of [the complainant's] nose would cause physical pain"); *Arzaga v. State*, 86 S.W.3d 767, 778 (Tex. App.—El Paso 2002, no pet.) (noting that the "existence of a cut, bruise, or scrape on the body is sufficient evidence of physical pain"); *Goodin v. State*, 750 S.W.2d 857, 859 (Tex. App.—Corpus Christi[–Edinburg] 1988, pet. [ref'd]) (sufficient evidence [existed] although the complainant did not testify about physical pain because there was a reasonable inference that "bruises and muscle strain caused him 'physical pain'").

*Maples v. Maples*, 601 S.W.3d 23, 30 (Tex. App.—Tyler 2020, no pet.) (mem. op.). Because the experience of pain is subjective, a victim's testimony that pain was experienced is sufficient evidence of bodily injury. *Jimenez v. State*, No. 08-20-00003-CR, 2022 WL 484548, at *3 (Tex. App.—El Paso Feb. 17, 2022, no pet.) (not designated for publication) ("Physical pain is inherently subjective, and both this [c]ourt and the Court of Criminal Appeals have held that a victim's testimony—if believed by the jury—that she felt pain is sufficient to establish the element of bodily injury.").

Here, Complainant testified that she had attempted to grab Appellant's hand to alleviate the pain caused by his dragging her by the hair. Being dragged by the hair also caused Complainant to experience lingering pain in her arms. Complainant also suffered an injury when an artificial nail that she was wearing was ripped off and torn down to the nail bed. This caused her pain at the time of the injury and for weeks afterward. This testimony is sufficient to support a finding that Appellant caused bodily injury to Complainant.

**4. Though not required to prove the manner and means of the assault, the evidence is sufficient to establish that Appellant committed the offense by the manner and means alleged in the information.**

The information alleged that Appellant had committed the offense of assault "by grabbing [Complainant] with the hand of [Appellant] and/or by grabbing her hair with the hand of [Appellant] and pulling with force and/or by grabbing her hair and

dragging her body on the floor with the hand of [Appellant]." As noted, the evidence established that Appellant had dragged Complainant by the hair.

As a general proposition, the State is not required to prove the manner and means of the assault alleged in an information. *Bin Fang*, 544 S.W.3d at 929. However, even if proof of manner and means were necessary, the evidence in this case is sufficient.

**5. Though not an element of the offense, the evidence supports the trial court's finding that Appellant was in a dating relationship with Complainant.**

Here, the information charged that Complainant was "a member of [Appellant's] family or household or [a person] with whom [Appellant] had a dating relationship." However, Appellant was convicted of a Class A misdemeanor. Because Appellant was convicted of misdemeanor assault, we need not determine whether there was proof that Appellant and Complainant were in a dating relationship because the dating allegation is not a part of a hypothetically correct charge:

> [A]ppellant was charged with, and convicted of, a Class A misdemeanor assault for causing bodily injury. For this type of misdemeanor assault, the hypothetically correct jury charge would not include any element related to a special relationship or association. *See* Tex. Penal Code [Ann.] § 22.0[1](a)(1); *see also Wert*[ *v. State*], 383 S.W.3d [747,] 755 [(Tex. App.—Houston [14th Dist.] 2012, no pet.)] (omitting reference to a dating relationship from the hypothetically correct jury charge for a misdemeanor[-]assault conviction when the defendant assaulted his girlfriend).

*Id.* at 929–30. The existence of a dating relationship becomes an element of the offense only in certain felony assaults. *Id.* at 929 (stating that assault under Penal

11

Code Section 22.01(b) is generally a Class A misdemeanor that may become a felony of the third degree under Penal Code Section 22.01(b)(2) "if the State alleges and proves, among other things, that the defendant and the victim had a relationship or association described by certain sections of the Family Code—broadly speaking, a dating relationship, a familial relationship, or membership in a household").

The trial court's judgment did contain an affirmative finding that Appellant had committed an offense involving family violence. This finding, however, was made in accordance with Article 42.013 of the Texas Code of Criminal Procedure, which provides that "[i]n the trial of an offense under Title 5, Penal Code, if the court determines that the offense involved family violence, as defined by Section 71.004,[1]

---

[1]Section 71.004 of the Family Code provides that "[f]amily violence" means . . . dating violence, as that term is defined by Section 71.0021." Tex. Fam. Code Ann. § 71.004(3). Section 71.0021 provides,

(a) "Dating violence" means an act, other than a defensive measure to protect oneself, by an actor that:

(1) is committed against a victim or applicant for a protective order:

(A) with whom the actor has or has had a dating relationship; or

(B) because of the victim's or applicant's marriage to or dating relationship with an individual with whom the actor is or has been in a dating relationship or marriage; and

(2) is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the victim

12

Family Code, the court shall make an affirmative finding of that fact and enter the affirmative finding in the judgment of the case." Tex. Code Crim. Proc. Ann. art. 42.013 (footnote omitted). Article 42.013's purpose is "to simplify the prosecution of subsequent family[-]assault cases by making it unnecessary to relitigate the details of the previous assault[;] the State may rely on the affirmative finding in the prior judgment to prove that the victim of the defendant's previous assault was a family member." *State v. Eakins*, 71 S.W.3d 443, 444 (Tex. App.—Austin 2002, no pet.). Thus, a finding under Article 42.013 is not an element of the offense of misdemeanor assault. *McCall v. State*, 635 S.W.3d 261, 270 (Tex. App.—Austin 2021, pet. ref'd) (op. on reh'g).

---

or applicant in fear of imminent physical harm, bodily injury, assault, or sexual assault.

(b) For purposes of this title, "dating relationship" means a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature. The existence of such a relationship shall be determined based on consideration of:

(1) the length of the relationship;

(2) the nature of the relationship; and

(3) the frequency and type of interaction between the persons involved in the relationship.

(c) A casual acquaintanceship or ordinary fraternization in a business or social context does not constitute a "dating relationship" under Subsection (b).

Tex. Fam. Code Ann. § 71.0021.

In any event, the evidence establishes that Appellant was in a dating relationship with Complainant, and Appellant does not contend otherwise.

## IV. Conclusion

Having held that sufficient evidence supports each of the elements of misdemeanor assault, we overrule Appellant's sole issue and affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: January 12, 2023