**Affirmed and Memorandum Majority and Concurring Opinions filed May 9, 2024.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-22-00449-CR

---

**LARRY DEWITT JACKSON, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 21st District Court**
**Washington County, Texas**
**Trial Court Cause No. 18734**

---

### MEMORANDUM MAJORITY OPINION

Appellant Larry Dewitt Jackson, Jr., appeals his convictions and concurrent sentences for count 1, continuous sexual abuse of a minor under the age of 14 (life imprisonment), and count 2, indecency with a child by exposure, enhanced by a prior conviction for robbery (20-years imprisonment). In three issues, he (1) requests that this court abate the proceedings to supplement the record with his motion for funds to hire a mitigation expert, (2) challenges the trial court's denial of that motion, and (3) asserts that he was prejudicially denied effective assistance

of counsel. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged in a two-count indictment with continuous sexual abuse of a child under 14 years of age, and indecency with a child by exposure. In each instance the child referred to is Jovanna,[1] appellant's daughter.

Appellant's case was tried before a Washington County jury, which found him guilty on both counts. Appellant elected for the trial court to assess punishment.

### *The guilt-innocence phase of appellant's trial*

Jovanna was sixteen at the time of trial. When asked why she was in court to testify, Jovanna answered it was because when she was younger, she was sexually assaulted by her father. She testified in detail about various sexual acts her father performed and made her perform beginning when she was nine years old. She gave vivid accounts of the first incidents occurring in a pool and a shower when she was nine involving inappropriate touching, later when she was past ten years, events where her dad would coerce her to perform oral sexual acts in the car which became "like an every day or every other day type of thing," and she described instances at her house where her father would force her to have sex (vaginal penetration) with him in her room while others were in the house.

Jovanna testified that her father told her to remember his three rules: One, "don't tell nobody," two, only he can do this, and three do everything he says. Jovanna recalled that appellant gave her those rules when the abuse first began and after an event when he had sexually abused her, he would remind her of the rules.

---

[1] To protect the complainant's identity, we have not used her actual name since she was a minor at the time of the offense. *See* Tex. R. App. P. 9.8.

2

When she was thirteen years old, she broke the first rule—after experiencing depression and having thoughts of self-harm, she told her friend why she wanted to die, and a teacher was informed. The school counselor who was subsequently notified testified about the reports Jovanna made to her: During Christmas break, her father came into her room, removed her clothing and her underwear, and asked her "is this still mine?" The counselor explained that she understood Jovanna was talking about her private parts. Jovanna was eventually interviewed by a forensic interviewer and reported the abuse. The interview was videotaped and admitted, but the trial court excluded the testimony from the forensic interviewer about details of the sexual abuse after sustaining a best evidence objection.

A detective also sought an interview with appellant who agreed to the voluntary, non-custodial interview that lasted about three hours. During the interview appellant was asked to draw a rendition of his penis, which was admitted at trial over objection by appellant's trial counsel. The detective testified that appellant confessed during the interview. Appellant filed a written objection to the use of his video interview at trial and objected at trial. The trial court also ultimately admitted the interview.

Appellant's counsel defended the case by attacking Jovanna's credibility. On cross-examination, she admitted to making similar accusations against a cousin. Appellant's counsel also presented two witnesses that provided testimony aimed to contradict specific instances of abuse alleged by the State. One witness testified that Jovanna did not have a good reputation for being truthful. Appellant also testified, and consistently denied having any sexual activity with Jovanna and denied that he provided a confession. The State asked appellant, if he was found guilty, what should be his punishment.

Q. [State]: "Assuming this jury finds the evidence credible from

3

[Jovanna] and all the other witnesses that testified against you, what should this jury do?

A. [Appellant]: Life without parole."

The jury returned a verdict of guilty to both counts of the indictment. Appellant had elected the trial court to assess punishment and the matter was set for a separate punishment hearing.

Prior to the beginning of the punishment phase, appellant's trial counsel asked to address the court and re-urged his previously filed Motion for Funds in Aid of Defense and requested a continuance to allow him to employ a mitigation expert. The court denied the motion and gave a running objection to the court's ruling to apply for the duration of the punishment phase. Trial counsel remained in the courtroom throughout the punishment phase and engaged with opposing counsel and the court when the State offered its exhibits but refused to participate further based on his objection to the court's ruling on his motion. Specifically, when asked to offer an opening statement, cross-examine the State's only witness, present evidence, and to make a closing argument, appellant's counsel declined. In each instance appellant's counsel's protest was grounded upon the trial court's denial of his motion for expert assistance. When pronouncing sentence the court made the following remarks:

THE COURT: "All right. Well, the Court, having heard the evidence, I will tell you, Mr. Jackson, I also – and you don't have to stand up. You can stay seated. I very carefully listened to you testify as well, and when you did, you clearly told the Court what I should do in the event a jury found you guilty. Your own words were -- I believe you were asked by the prosecutor what should someone get if they are convicted of continuous sexual abuse of a child or something to that effect and your answer was 'life.'

So on Count 1 the Court is going to order that you be sentenced to life without parole. On Count 2 I'm going to order that you be sentenced to 20 years. I'm not going to stack them right now. I think that it's

4

sufficient to run those two concurrent."

## II. ISSUES AND ANALYSIS

### A. The record is supplemented; no further abatement is necessary.

In his first issue, appellant seeks an abatement to supplement the appellate record under Rule 34.5 of the Texas Rules of Appellate Procedure.[2]    After submission of the appeal on the briefs, we requested supplementation from the trial court clerk, obtained the desired portions of the trial court record, and reviewed those portions of the record.  As a result, appellant's first issue is moot.

### B. Did the trial court abuse its discretion in denying appellant's motion to request funds for a mitigation expert?

In his second issue, appellant contends the trial court abused its discretion by denying his motion for expert assistance.

### *Standard of Review and Relevant Legal Standards*

We review the trial court's ruling for abuse of discretion. *Griffith v. State*, 983 S.W.2d 282, 287 (Tex. Crim. App. 1998). The State must provide a defendant with the "basic tools" to present a defense, but it is not required to purchase for an indigent defendant all the assistance that their "wealthier counterparts might buy." *Rey v. State*, 897 S.W.2d 333, 337 (Tex. Crim. App. 1995) (citing *Ake v. Oklahoma*, 470 U.S. 68, 77 (1985)).   In determining whether the State must provide assistance, the courts balance the private interest that will be affected by the action of the State with the State's interest that will be affected if the safeguard

---

[2] Though the rules do not prohibit such a request for supplementation in a party's appellate brief, the appropriate practice is to make the request in a separate instrument, typically by letter, earlier than the time of filing the brief (if possible), and to the appropriate clerk. *See e.g.*, Tex. R. App. P. 34.5(b)(1) ("If a relevant item has been omitted from the clerk's record, the trial court, the appellate court, or **any party** may by letter direct **the trial court clerk** to prepare, certify, and file in the appellate court a supplement containing the omitted item.") (emphasis added).

is provided, along with the probable value of the additional procedural safeguards that are sought and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided. *Rey v. State*, 897 S.W.2d at 337 (citing *Ake*, 470 U.S. at 77); *see Busby v. State*, 990 S.W.2d 263, 271 (Tex. Crim. App. 1999) ("The key question appears to be whether there is a high risk of an inaccurate verdict absent the appointment of the requested expert."). In practice, we need not deliberate heavily on the private interest and the public interest, not because they are unimportant but because they are only marginally case-specific considerations. Appellant's interest in the accuracy of his proceeding in which his life or liberty is at stake, like most criminal defendants, weighs heavily in the analysis. Similarly, the second factor addresses the State's concern for judicial economy, but it is not as substantial as the State's interest in an accurate outcome at trial. *See Rey v. State*, 897 S.W.2d at 337.

The burden rests on the defendant to show how the expert at issue would assist in the defense before being entitled to the appointment of the expert. *Griffith*, 983 S.W.2d at 286-87. In order to make this showing, the defendant must provide the trial court with information about what evidence will be presented against the defendant and how the expert will assist the defendant in rebutting such evidence. *Rey*, 897 S.W.2d at 341. In doing so, the defendant must offer more than vague, conclusory, or undeveloped assertions that the requested assistance would be beneficial. *Williams v. State*, 958 S.W.2d 186, 192 (Tex. Crim. App. 1997); *Cameron v. State*, 630 S.W.3d 579, 597 (Tex. App.—San Antonio 2021, no pet.). Courts have concluded a defendant did not make such a showing if the defendant failed to (1) support the motion with affidavits or other evidence in support of the defensive theory, (2) explain the theory or why expert assistance would be helpful in establishing it, or (3) show there was a reason to question the State's expert and

proof. *Rey*, 897 S.W.2d at 341 (collecting cases).

Appellant's complaint is based on the record developed after appellant had been found guilty, when on the day of and just before the commencement of the punishment hearing, his trial counsel orally re-urged the motion:

> MR. DAY: Yes, Judge. The Defense is not ready to proceed with this hearing at this time. On March 16, we filed a Motion for Funds in Aid of Defense which was denied. The purpose of that motion was to enable me to employ and consult with a mitigation specialist, and so at this time I would reurge that motion for the reasons stated therein, request a continuance, and allow me to employ and consult with a mitigation specialist.
>
> THE COURT: Response from the State?
>
> MS. HAEVISCHER: I believe that that would have been, as I understand it correctly, a proper pretrial matter, and as we have clearly made it past the pretrial date, it has not been raised in a timely manner.
>
> THE COURT: I believe that was presented to Judge Campbell, and did he -- from what I saw going through the file throughout the trial, he ruled on it and denied it, as you said.
>
> MR. DAY: No, ma'am, you ruled on it.
>
> THE COURT: Oh, I ruled on it?
>
> MR. DAY: He gave it to you and you denied the motion.
>
> THE COURT: Oh, I denied it.
>
> MR. DAY: Yes, ma'am.
>
> MR. DAY: I believe it's sealed in one of the --
>
> THE COURT: Oh, it's one of those sealed ones? Okay.
>
> Well, I know I studied it very carefully at the time, and I believe the reason I denied it will stand and I will continue to deny it and we will move forward.
>
> MR. DAY: May I have a running objection then, Judge?
>
> THE COURT: Yes, sir. Absolutely.
>
> MR. DAY: All right. Rather than cloaking the Court with constant

7

objections.

THE COURT: Sure. I understand. So but it's been ruled on and that ruling will stand.

The oral re-urging of the motion consists of nothing more than appellant's counsel's statement that the purpose of the motion was to enable counsel "to employ and consult with a mitigation specialist," and the court's open-court denial of the motion as re-urged. That oral motion is devoid of any assertion of how the requested assistance would be beneficial. *See Rey*, 897 S.W.2d at 341. Thus, to the extent appellant's second issue is based on the oral re-urging of the motion for funds, the issue is overruled. However, after submission of the appeal on the briefs, the record was supplemented with the original written motion. We therefore consider appellant's second issue as it pertains to the original written motion.

The two-page *Ex Parte* Motion for Funds in Aid of Defense filed in the trial court contained six numbered paragraphs. The first paragraph requests that the motion and any order on the motion be sealed "after consideration by submission and disposition by the Court." The second paragraph sets out plainly the accusations against appellant. The third paragraph asserts that appellant had already been deemed indigent by the court. The fourth paragraph identifies the witness, "Dr. JUANDALYN TAYLOR, Ph.D., J.D. of Taylor Advocacy Group" as "a mitigation specialist." It sets out the details of the request as follows:

> Defendant requests the Court to appoint Dr. TAYLOR as his mitigation specialist to assist in the preparation of the defense and trial of the punishment phase of this case, and that the Court order the County Auditor to pay the costs of such services. Dr. TAYLOR estimates that $4,000 should be sufficient to compensate her for the services contemplated by this Motion.

The fifth paragraph titled "Employment Necessary", an ideal place to set out

8

appellant's argument, merely states the following:

> Defendant seeks to employ Dr. TAYLOR as both a consulting and testifying expert for Defendant. Dr. TAYLOR is a necessary witness at the trial of this case. Dr. TAYLOR's curriculum vitae and qualifications can be provided to the Court if necessary.

The sixth and final paragraph without further explanation provides the court with citations to the legal authority for the request.

The written motion, as compared to the record of the short oral rehearing of the motion, at least illustrates a timely request by appellant's trial counsel for a particular expert for a particular purpose (i.e., "to assist in the preparation of the defense and trial of the punishment phase of this case" *presumably* on matters pertaining to mitigation, as he is identified as a "mitigation specialist"). However, the motion does not explain or justify any link between Dr. Taylor's expertise and any needs of the case. The motion contained no affidavit or other evidence in its support and beyond the subsequent rehearing, there is no record of an evidentiary hearing on the motion, as appellant did not request one. Under the applicable standard of review, we cannot find on this record—lacking any showing that appellant carried his burden of demonstrating a need for an expert—that the court abused its discretion in denying the *Ex Parte* Motion for Funds in Aid of Defense. *See Cameron v. State*, 630 S.W.3d at 598.

We therefore overrule appellant's second issue.

## C. Did appellant suffer prejudicial ineffective assistance of counsel such that he is entitled to a new trial, on punishment or otherwise?

In appellant's third issue, appellant complains that his trial counsel denied him effective assistance of counsel.

He contends various instances in the record illustrate his counsel's deficient performance: when presenting appellant's request to retain new counsel, during a

suppression hearing, and during punishment. As to the latter, appellant contends that his counsel "completely abandoned" his representation when he "refused to participate in appellant's punishment hearing based on the trial court's denial of a motion for funding to provide expert mitigation assistance."

## Evaluating Ineffective Assistance and the *Goodspeed* Standard

Both the United States Constitution and the Texas Constitution guarantee an accused the right to assistance of counsel. U.S. Const. amend. VI; Tex. Const. art. I, § 10; *see also* Tex. Code Crim. Proc. Ann. art. 1.051 (Supp.). This right necessarily includes the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Ex parte Gonzales*, 945 S.W.2d 830, 835 (Tex. Crim. App. 1997). To prevail on his ineffective-assistance-of-counsel claims, appellant must prove (1) counsel's representation fell below the objective standard of reasonableness, and (2) a reasonable probability that but for counsel's alleged deficiency the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687–88; *see also Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986) (applying *Strickland* standard to ineffective-assistance claims under the Texas Constitution). In considering an ineffective-assistance claim, we indulge a strong presumption that counsel's actions fell within the wide range of reasonable professional behavior and were motivated by sound trial strategy. *Strickland*, 466 U.S. at 689; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). To defeat this presumption, any allegation of ineffectiveness must be firmly grounded in the record so that the record affirmatively shows the alleged ineffectiveness. *Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017).

Trial counsel generally should be given an opportunity to explain counsel's

actions before the court finds counsel ineffective. *Id.* In most cases, a direct appeal proves an inadequate vehicle for raising an ineffective-assistance claim because the record generally stands undeveloped and cannot adequately reflect the motives behind trial counsel's actions. *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003); *Thompson*, 9 S.W.3d at 813–14. In the face of a silent record, we cannot know trial counsel's strategy, so we will not find deficient performance unless the challenged conduct is "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Hart v. State*, 667 S.W.3d 774, 783 (Tex. Crim. App. 2023) ("Under these circumstances, wherein counsel has had no opportunity to explain his actions, we will assume a strategic motive, if one can be ascertained, and find counsel deficient only if his conduct was so outrageous that no competent attorney would have engaged in it or, stated differently, if no reasonable trial strategy could justify counsel's actions.").

A sound trial strategy may be executed imperfectly, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). Instead, we "review the totality of the representation and the circumstances of each case without the benefit of hindsight." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). Though counsel's conscious decision not to, for example, object to evidence is not insulated from review, unless the defendant overcomes the presumption that counsel's actions were based in sound trial strategy, counsel generally will not be found ineffective. *Ex parte Flores*, 387 S.W.3d 626, 633 (Tex. Crim. App. 2012).

### *Whether trial counsel was ineffective prior to the punishment phase*

Though his predominate complaint relates to his trial counsel's conduct at

the punishment hearing which we will more significantly address below, because we review the complaints chronologically, we first briefly address the complaints to his trial counsel response to his open-court request to hire a new lawyer and his trial counsel's statements at a suppression hearing about missing a holiday with his family.

Approximately a year and a half before trial, after appellant's trial counsel had begun working on the case, appellant reported to the court that due to his belief that he anticipated receipt of personal financial resources he planned to hire his own lawyer. Despite appellant's expressed desire, appellant's retention of counsel with his own funds remained uncertain so that State urged the court to keep appellant's trial counsel on the case. When asked by the court to respond, appellant's trial counsel responded that he learned of appellant's desire to hire his own counsel the day of the hearing, and provided the following response:

> So I've already got 15 or more hours in this case and for me to stay on it and get ready for a December trial, when he's going to hire his own lawyer, is wasteful of my time and I would have to neglect other areas of my practice. So I guess what I'm saying is, I understand I've been fired and I don't think I can take any more action, but if the Court chooses to leave me on, then I hate to –

Appellant targets specifically his trial counsel's expression that he was "worried about neglecting other areas of his practice" which appellant concludes, without further explanation, "demonstrates trial counsel's ineffectiveness."

Similarly, appellant also points to his trial counsel's statement at a suppression hearing during the guilt-innocence phase, wherein he stated that "I prepared this objection on Memorial Day instead of being home with my grandchildren, so we are all working late on this case." Again, without significant explanation, appellant suggests that his trial counsel's expressed concern for his own personal life, "demonstrates trial counsel's ineffectiveness".

12

From our review of the record including the context in which each of these two complained of instances occurred, neither instance illustrates any appreciable form of neglect in his counsel's representation. At best, these are two instances of an attorney under reasonable circumstances relating a desire to manage his docket efficiently and a remark that he has sacrificed his family time for his work on appellant's case. At worst, these isolated instances are as appellant describes them, two expressions of concern made to the court about his other cases and personal life, i.e., matters other than his case. Appellant has not provided, nor can we find after reasonable research, any legal authority to demonstrate how these particular instances are comparable with neglectful conduct that would form the basis of an ineffective assistance claim. Neither expression amounts to evidence of his counsel's neglect, and thus both fail under the first prong of the *Strickland* test.

### *Whether trial counsel was ineffective at the punishment phase*

Finally, we address appellant's complaint that his "[t]rial counsel completely abandoned his representation of appellant for the punishment hearing," when in four instances during the punishment hearing his counsel declined to participate "for the reasons and objections earlier stated." That is, when the court asked counsel first if he would provide an opening statement, then, if he would cross-examine the state's sole witness, then, if he would present evidence, and finally if he would provide a closing statement, appellant's trial counsel declined each time, resting on his objection to the punishment hearing proceeding forward because the court declined to provide funds for expert assistance.

Appellant contends that the record has preserved appellant's trial counsel's strategy for not participating, that we are to accept appellant's stated reason for not participating as evidence of his strategy, and that alternatively, no sound trial strategy would justify his conduct. We disagree on both counts. First, the record of

appellant's trial counsel's passing on the court's invitations to participate at various stages operates as an exhibition of counsel's unusual conduct not an explanation. The record remains silent *why* appellant's counsel persisted in re-urging an objection he had already timely made.

Appellant characterizes trial counsel's conduct as "abandonment." Trial counsel did not declare an intention to cease representing appellant at any point. There is no indication his counsel ever left the proceedings or otherwise was not present. Despite saying that he refused to "take part" at several instances of the punishment hearing, he continued to respond to the court, declaring "no objection" to the State's reintroduction of exhibits, and made clear it was a protest to the court's prior ruling; there is no indication he ever disengaged from listening to the court, the State or the witness during any of the punishment hearing. Rather, each time he stated he refused to take part or participate, he re-urged his objection.

Because appellant's trial counsel continued in his representation of appellant at the hearing and remained engaged, we acknowledge that he *could have*, but choose not to, participate in parts of the punishment hearing.

**Does the record establish that trial counsel was ineffective at the punishment hearing for not presenting mitigating evidence?**

Appellant complains trial counsel did nothing to humanize him or allow the trial court to accurately gauge his moral culpability. Yet, appellant concedes that there is no evidence "what the mitigation evidence might be," and no evidence showing whether trial counsel "attempted to investigate any mitigation evidence."

Merely suggesting that there may have been mitigating evidence is not sufficient. Without establishing the existence of any favorable evidence that available witnesses would have provided, appellant cannot demonstrate ineffective assistance based on a failure to present mitigating evidence. *See Bone*, 77 S.W.3d

at 834-35 (trial counsel was not ineffective for failing to produce more mitigating evidence when the record did not show that other mitigating evidence existed); *Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (when appellant did not explain what mitigating evidence trial counsel should have proffered, court "cannot possibly find that a failure to proffer such evidence constituted ineffective assistance"); *Robinson v. State*, 514 S.W.3d 816, 824 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) ("A defendant complaining about trial counsel's failure to call witnesses must show the witnesses were available and that he would have benefitted from their testimony."); *see also Silva v. State*, No. 14-19-00720-CR, 2021 WL 970560, at *4-5 (Tex. App.—Houston [14th Dist.] Mar. 16, 2021, no pet.) (mem. op., not designated for publication) ("Here, the record does not show that Villarreal was available to testify at Appellant's punishment hearing. The record is also silent as to counsel's reasons for failing to call Villarreal at the punishment hearing. Therefore, Appellant's argument fails to rebut the strong presumption in favor of effectiveness of counsel.").

Appellant had already testified during the guilt/innocence phase about matters which might have mitigated his punishment. He talked about his occupation. He testified about his previous good behavior in prison which allowed him to leave to work during the week. He successfully completed his parole. He talked about his love and caring for his invalid wife. Appellant's trial counsel could have reasonably believed that all the mitigating evidence available from appellant was already before the judge, and strategically recommended appellant not testify rather risk exposing appellant to further damaging cross-examination, particularly about appellant's prior statement about the punishment.

Presuming that trial counsel had thoroughly investigated and discovered no useful mitigation evidence existed using his own efforts, a reasonable strategy

could have been to persist in the objection, draw attention to the court's adverse ruling on mitigation evidence, present no mitigation evidence and exclusively emphasize the court's adverse ruling throughout the hearing up to the moment of the court's decision, in an effort to prompt the court to compromise its sentence assessment against its own responsibility for the lack of mitigation evidence.

**Does the record establish trial counsel was ineffective for not providing an opening statement, cross-examining the witness, or providing a closing statement at the punishment hearing?**

After the State essentially declined an opening statement ("No, Your Honor," then merely indicating it would later reoffer the evidence admitted in the previous phase), trial counsel refused to give an opening statement, "for the objections and reasons earlier stated." Trial counsel's decision to decline could comport with a reasonable trial strategy. *See Darkins v. State*, 430 S.W.3d 559, 570 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). Counsel's failure to make an opening statement was not conduct "so outrageous that no competent attorney would have engaged in it." *See id.*, citing *Goodspeed,* 187 S.W.3d at 392; *see also Rylander v. State,* 101 S.W.3d 107, 110 (Tex. Crim. App. 2003) (stating that not making opening statement during punishment phase, among other alleged errors, alone is not sufficient to show ineffective assistance in face of silent record).

The State only called the victim to testify during the punishment phase. Trial counsel reasonably could have determined additional cross-examination of the child victim could have caused more damage than benefit. *See Navarro v. State*, 154 S.W.3d 795, 799 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). Trial counsel had already attacked the victim's credibility: he had already cross-examined the victim during guilt/innocence, had called an alibi witness as to one alleged incident to contradict the State's case, presented evidence about

16

victim's use of pornography and sending naked photos to boys, and called two relatives who testified the victim was not truthful. Appellant has not overcome the strong presumption that trial counsel's decisions regarding cross-examination fall within the wide range of reasonable professional assistance. *See id.*

We next consider whether appellant's trial counsel's waiver of closing argument constituted ineffective assistance. "[C]ounsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage." *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003). When the court asked for "any closing remarks?", the State briefly took the chance to reiterate appellant's own testimony - "I can agree with Mr. Jackson on one thing that he said in that entire trial; and that is, if this jury found him guilty, he deserves no less than life without parole," and thus asked for the maximum punishment and asked the court to consider stacking the sentences. Then, appellants' trial counsel declined to make closing argument, again resting on his objection. Courts have observed that waiving closing argument can serve as a reasonable trial strategy. *See Salinas v. State*, 773 S.W.2d 779, 783 (Tex. App.—San Antonio 1989, pet. ref'd). In this case, we presume it to be a not unreasonable trial strategy to decline to give a closing argument and thus precluding the State from offering any additional arguments in rebuttal.

*Totality of the Representation*

When evaluating a claim of ineffective assistance, appellate courts look to the totality of the representation and the circumstances of each case. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Trial counsel vigorously defended appellant both before and during trial. Even presuming some fault in

17

appellant's counsel's decision making at the punishment phase,[3] having reviewed the entire record, including his pretrial, guilt/innocence and punishment phase representation, we conclude any failure in his conduct at punishment was not enough to render his total representation ineffective. *See Okonkwo v. State*, 398 S.W.3d 689, 693 (Tex. Crim. App. 2013) (stating that judicial evaluation of ineffective-assistance claims turns on "all the circumstances" and observing that act or omission by counsel that is unreasonable in one case may be reasonable in another one).

Having found appellant's ineffective assistance complaint fails under the first prong of the *Strickland* test, we overrule his third issue.

### III. CONCLUSION

Having determined appellant's first issue moot and having overruled the remaining issues, we affirm the trial court's judgments.

/s/     Randy Wilson
          Justice

Panel consists of Justices Jewell, Spain, and Wilson. (Spain, J., concurring).

Do not publish — Tex. R. App. P. 47.2(b)

---

[3] We should be wary of holding that refusing to offer opening and closing arguments and refusing to cross-examine witnesses or offer mitigation witnesses is per-se ineffective. Were that the case, trial counsel could always elect to "refuse to participate" following some adverse ruling, see what result is obtained, and, if dissatisfied with that result, get a second bite at the apple.